|, COOKS, Judge.
A.L. Moore, Jr. is the exclusive distributor of Exxon products in Catahoula and Concordia Parishes. For many years, A.K. “Buddy” Lancaster purchased petroleum products from Moore and sold them to his own retail customers. According to Moore, Lancaster came to him in 1984 and told him he was being sued by Southern Petroleum. Lancaster asked Moore if he would “carry him” until he was able to pay Southern Petroleum. Moore testified from 1984 through 1986 Lancaster incurred unpaid invoices totaling $65,332.49. According to Moore, after 1986 the two men reached an agreement requiring Lancaster to pay Moore every thirty days for the fuel he purchased. Moore also stated that on December 4, 1990, Lancaster agreed to pay one cent extra per gallon of fuel purchased in the future to apply to the debt incurred from 1984 through 1986.
Lancaster began paying the extra one cent per gallon in December of 1990 and continued paying the amount until shortly before his death in 1996. According to Moore, Lancaster timely paid all invoices with the exception of three invoices in 1991, which “slipped through the cracks.” The amount of the three unpaid invoices was $11,037.96. When his bookkeeper, *260 Kathy Spann, called it to his attention, Moore testified he discussed the missed payments with Lancaster. Moore stated he and Lancaster agreed the three unpaid invoices would be added to the 1984-86 debt and repaid pursuant to the extra penny per gallon agreement. At this point, the account was changed requiring Lancaster to pay Moore within ten days of each invoice rather than every thirty days for the fuel he purchased. Moore also testified in 1996 there were two more unpaid invoices incurred by Lancaster totaling $8,858.36. Moore acknowledged from 1990 until' his death, Lancaster paid the extra penny per gallon and reduced his debt by $20,580.72.
On August 7, 1996, Lancaster died. Moore contacted Lancaster’s widow, and | ¡¡.inquired as to how her husband’s debt to him would be paid. Ms. Young, Lancaster’s daughter, visited Moore’s office and examined the pertinent records. During this time, Lancaster’s Succession was opened and closed without administration. In the sworn Detailed Descriptive List signed by Lancaster’s widow and children, the debt to Moore is listed as $65,000.00. The record contains affidavits executed by the Heirs each stating he or she “has read, reviewed and signed the Detailed Descriptive List, that all assets and debts are true and correct to the best of [his or] her knowledge, information and belief.”
On May 12, 1997, Moore filed a petition on open account against the Heirs of the Estate of Arthur Lancaster, contending he was owed $64,648.09. The Heirs filed exceptions of prescription. Moore asked the trial court to consolidate the hearing on the prescription exceptions and the trial on the merits. The Heirs objected and requested that the court only hear the exceptions. The trial court granted the Heirs’ request. On October 23, 1997, the trial court heard the evidence and took the matter under advisement. On February 2, 1998, the trial court issued reasons expressing its intent to render judgment on “the exception as well as the merits.” (Emphasis ours.)
In its Reasons for Judgment, the trial court found that the debt accrued from 1984 through April of 1985 was not sufficiently proven because Moore’s bookkeeper, Ms. Spann, was not employed during this period and did not have personal knowledge of the debt. The trial court also ruled the 1991 unpaid invoices were prescribed. Although Moore testified Lancaster agreed to add the 1991 debt to the 1984-86 debt, the trial court found Moore unilaterally added the debt without an agreement or acknowledgment by Lancaster. The trial court then awarded Moore $22,342.40 for the period from April of 1985 through 1986 and $8,856.36 for the period of 1996. These awards were subject to a credit of $20,580.72 for amounts repaid and $174.00 for a returned tire. Thus, the total amount of the judgment 1 srendered in favor of Moore was $10,444.04.
Moore filed an Application for New Trial, which the trial court initially denied. Upon reviewing the transcript and discovering her earlier ruling restricting the hearing to the issue of prescription, the judge granted Moore’s motion for new trial. Following the new trial hearing, the judge granted an involuntary dismissal in favor of the Heirs finding Moore failed to establish an element of his claim. Specifically, the judge held the record lacked proof as to the responsibility of the Heirs for the debts of Lancaster. Moore appealed the judgment of the trial court, asserting the following assignments of error:
1. The trial court erred in granting an involuntary dismissal based on the lack of evidence in the record regarding the identity and liability of the Heirs.
2. The trial court erred in finding that portions of the debt due on the open account had prescribed.
3. The trial court erred in ruling that the invoices proving the debt of Lancaster were inadmissible hearsay.
*261 4. The trial court erred in finding that Moore did not prove the debt due under the open account.
5. The trial court erred in denying Moore’s attorney fees and interest on the debt due under the open account.
ANALYSIS
Moore contends the trial court erroneously granted the involuntary dismissal because the Succession of Lancaster record should have been considered “in evidence” at the trial on the merits. We agree. The trial court, while noting the Heirs’ acceptance of the Succession of Lancaster without benefit of inventory was introduced at the prescription hearing, held this evidence could not be considered at the trial on the merits.
The following colloquy took place when Moore first attempted to introduce Lancaster’s Succession record at the prescription hearing:
|4MR. LOSSIN: Your Honor, before we get started. I ask that the Court take or recognize the succession proceedings of Mr. Lancaster and just so you wouldn’t have to go and get the file, I have a true copy of the proceedings and also a true copy of the inhertience [sic] and the state tax return, I would like to introduce those into the file.
THE COURT: Certified copy?
MR. LOSSIN: Yeah.
THE COURT: Mr. Gore or Mr. Donald, do you have any objection?
MR. GORE: Well, I don’t have any objection to the Court taking Judicial Notice of the succession proceedings. We take issue with the affect that the succession has, but as far as a succession being filed the Court can take even Judicial Notice of that, I would rather you do that than introduce it because it will save court cost, but -
THE COURT: Why don’t you tell me—
MR. LOSSIN: I would like to introduce into the record.
THE COURT: All right. Mr. Lossin I assume is putting up the court costs today so — but all that is a copy, a Certified Copy of the particular succession that’s filed here in Concordia Parish?
MR. LOSSIN: Yes. So you wouldn’t have to get the whole file, I just made copies of it and brought it to you.
THE COURT: Since you have it, I’m like Mr. Gore, it’s going to run the cost up, I don’t mind looking at the succession, if you will just tell me the number, being a prior Clerk myself I know it’s going to cost you four fifty for the first page and three fifty for each additional page.
MR. LOSSIN: We’ll pay for it, Your Honor.
THE COURT: All right. Let it be introduced, it will be—
MR. DONALD: Your Honor, make sure that’s on the record.
MR. GORE: Yeah.
THE COURT: Pardon me.
MR. GORDON: Make sure that’s on the record.
THE COURT: All right.
(Emphasis ours.)
1 BThus, Moore argues the Succession of Lancaster record was introduced in this proceeding and made part of the present record. La.Code Civ.P. art. 1978 provides in part:
It shall not be necessary in a non-jury trial to resummon the witnesses or to hear them anew at a new trial if their testimony has once been reduced to writing, but all such testimony and evidence received on the former trial shall be considered as already in evidence.
The article mandates that evidence received at a former trial is considered already in evidence at the new trial. The trial court initially decided the merits of the case by the evidence presented at the prescription hearing. Later, realizing her error in so doing, she granted Moore’s motion for new trial. At the new trial hearing, the trial judge refused to consider *262 the evidence introduced during the earlier hearing. The following colloquy occurred between Moore’s counsel and the judge:
MR. LOSSIN: Your Honor, for the record, on the transcript I have it asks that the Certified copy of the Succession be filed.
'THE COURT: But do you have a transcript of the trial today, Mr. Lossin?
MR. LOSSIN: No, I don’t.
THE COURT: See that’s the problem. Because when this case first started, Mr. Donald and Mr. Gore, I think in a way out foxed you because they specifically said the evidence there, which you were objecting to, because you wanted a new trial would not be, used. So since it was not used, and there was no evidence today as who the heirs are, it’s like that matter was never tried that you are referring to.
After a thorough review of the record, we find the trial court legally erred in granting the involuntary dismissal. The Succession record was already “in evidence” when the trial court granted the involuntary dismissal. La.Code Civ.P. art. 1978. The signed affidavits clearly indicate the debt to Moore was acknowledged and accepted by each Heir. The debt to Moore was valued in the Succession of Lancaster at $65,000.00, and the amount Moore asked for in his petition on open account was $64,648.09. The $65,000.00 debt to Moore also was used by the Heirs as an estate Ifitax deduction.
We note, as well, that Moore’s uncontradicted testimony established the decedent began paying an extra cent to extinguish the entire amount owed him prior to 1990, including the portion incurred pre-April 1985. Lancaster’s payment on the entire debt constituted an “overt” act in renunciation of the advantages of prescription which may have accrued and affected the pre-April 1985 indebtedness. La.Civ.Code art. 8450 provides that “[rjenunciation may be express or tacit,” and that “[t]acit renunciation results from circumstances that give rise to a presumption that the advantages of- prescription have been abandoned.” Renunciation of accrued prescription “takes place ... when the intent to renounce is ... manifested by words or actions of the party in whose favor prescription has run.” Queen v. W. & W. Clarklift, Inc., 537 So.2d 1214, 1216 (La.App. 4 Cir.1989); see also Smith v. McKeller, 93-1944 (La.App. 1 Cir. 6/24/94); 638 So.2d 1192. The payment also constituted an acknowledgment by Lancaster of his continued and still binding obligation to pay the later indebtedness incurred during and after April 1985, including the unpaid 1991 invoices. See La.Civ.Code art. 3464. No evidence exists in the record to support the court’s conclusion that Moore unilaterally added the 1991 debt to the earlier obligation. Moore’s testimony stands uncontradicted.
La.R.S. 9:1421 states that every “successor” is presumed and deemed to have been accepted under benefit of inventory even though the acceptance was unconditional if an inventory or descriptive fist has been executed. However, the statute limits the personal liability of an heir or legatee to the “extent and value or amount of his inheritance.” This creates a defense which an heir can raise if his inheritance is insufficient to cover the debts of the succession.
Accordingly, for reasons expressed we find Moore sufficiently established the $64,648.09 indebtedness and the Heirs acknowledged and bound themselves to pay [7it to the “extent and value or amount of [their] inheritance.” Accordingly, we remand the case to the district court solely for a determination of the amount each heir inherited and is thereby obliged to pay Moore to extinguish the indebtedness, plus interest, reasonable attorney fees and court costs. All costs of this appeal are assessed against the Heirs to the same extent.
REVERSED AND REMANDED.