638 So.2d 1192 (1994)
Joan D. SMITH
v.
Kenneth Wayne McKELLER, et al.
No. 93 CA 1944.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
*1193 Phil E. Miley, Baton Rouge, for plaintiff-appellee Joan D. Smith.
Dennis A. Pennington, Baton Rouge, for defendants-appellants Kenneth W. McKeller, et al.
Before LOTTINGER, C.J., and CRAIN and LEBLANC, JJ.
LOTTINGER, Chief Judge.
This appeal arises from an action on an alleged promissory note. The trial court denied the defendants' peremptory exception of prescription and granted the plaintiff's motion for summary judgment. The defendants appeal.

FACTS
On May 16, 1983, John G. McKeller executed a document labeled "Promissory Note." The document indicated that it was payable on demand to Joan D. Smith, plaintiff-appellee. Further, the document indicated that it secured a sum of $10,652.00 against several acres of land.
On January 29, 1990, John G. McKeller died. The deceased was survived by three sons. The three sons are Kenneth Wayne McKeller, John C. McKeller, and Kerry G. McKeller (the McKellers), defendants-appellants. The McKellers, the heirs of the deceased, were placed in possession of the deceased's property pursuant to a judgment of possession signed in East Baton Rouge Parish.
A sworn detailed descriptive list of the deceased's assets and liabilities was filed by the McKellers in the succession proceedings. One of the debts listed in the detailed descriptive list was the debt evidenced by the above described document. However, the debt in favor of Smith, of which no part was ever paid, was marked as "contested."
*1194 On September 5, 1991, over one and a half years after the deceased's death, Smith filed action against the McKellers. In her petition, Smith asserted that the McKellers, as the heirs of the deceased, were responsible for the debt secured by the document. Furthermore, Smith's petition alleged that the deceased "acknowledged" the indebtedness on various occasions. Additionally, Smith's petition alleged that one of the three heirs "acknowledged" the indebtedness.
The McKellers answered Smith's petition, asserting various defenses. Most importantly, the McKellers filed the peremptory exception raising the objection of prescription. The McKellers contend that Smith's cause of action was prescribed on the face of her petition because more than five years had passed since the date the document was executed, that the alleged debt was never "acknowledged," and that the accrued prescription was never renounced.
At the hearing on the exception of prescription, Smith introduced into evidence a cassette tape upon which she recorded a conversation that she had with John C. McKeller after his father's death. The tape contained a discussion about the alleged indebtedness of the deceased to Smith. Subsequently, Smith filed a motion for summary judgment.

TRIAL COURT
The trial court overruled the McKellers' objection to prescription and granted Smith's motion for summary judgment. In its oral reasons for judgment, the trial court held that this matter presented no genuine issue of material fact. The trial court reasoned that Smith was entitled to summary judgment because the McKellers were not able to prove that they paid debts of the deceased which exceeded the value of their inheritance. Apparently, the trial court believed that although the McKellers listed the debt in the detailed descriptive list as contested, they were obligated to pay it unless they were able to show that the amount demanded by Smith, together with the other debts of the deceased which they had paid, exceeded the value of their inheritance. However, the trial court failed to provide any reason why it overruled the McKellers' peremptory exception raising the objection of prescription. The McKellers appeal.

ASSIGNMENTS OF ERROR
The McKellers submit four assignments of error. The McKellers contend the trial court erred: (1) by not ruling that the alleged promissory note had prescribed; (2) by ruling that the inclusion of the alleged indebtedness in the detailed descriptive list, despite the fact that it was marked as a contested debt, created a binding obligation on their part; (3) by not allowing them the opportunity to offer evidence that the alleged promissory note lacked consideration and that it was a simulation; and, (4) by holding all three heirs liable for the debt when only one of them purportedly renounced prescription.

ISSUES
The chief question presented by this appeal is whether the trial court erred by overruling the McKellers' peremptory exception raising the objection of prescription. However, the following issues must be resolved before we can provide an answer to this question: First, is the document a promissory note, which is subject to a five year prescriptive period? Second, is Smith's cause of action prescribed on the face of her petition? Third, if her petition facially reveals that her cause of action is prescribed, did Smith carry her burden of proof that her claim against the McKellers is not prescribed, by proving prescription was either interrupted prior to accruing or was renounced after it had accrued?

I
The McKellers claim that the document executed by the deceased is a promissory note, thus subject to a five year prescriptive period.[1] We agree.
*1195 Smith claims that the document in question is not a promissory note because it does not satisfy the elements of a negotiable instrument. Apparently, Smith argues that because the document is not a negotiable instrument, it cannot be a promissory note. Instead, Smith asserts that the document is an acknowledgment of indebtedness and concludes that because the document acknowledges indebtedness, it had the effect of creating a ten year prescriptive period, because it secured a loan of money which is subject to a three year prescriptive period.
A document that evidences a debt to be paid may be a negotiable promissory note, a non-negotiable promissory note, or not a note at all. Dixie Web Graphic Corporation v. Sharp, 619 So.2d 1173, 1175 (La. App. 1st Cir.1993). The title affixed to a document does not, of itself, control its character. Instead, the character of a document is determined by examining the entire writing. Sharp, 619 So.2d at 1175.
At the time the document was executed, the requirements of La.R.S. 10:3-104 had to be satisfied for it to be classified as a negotiable promissory note.[2] A document had to: "(1) be signed by the maker or drawer; (2) contain an unconditional promise or order to pay a sum certain in money; (3) be payable on demand or at a definite time; and, (4) be payable to order of bearer." Sharp, 619 So.2d at 1175. However, if a document satisfied the first three requirements, but not the fourth, it was classified as a non-negotiable note. Sharp, 619 So.2d at 1175.
At the time the document was executed, La.R.S. 10:3-102(1)(c) provided that "[a] `promise' is an undertaking to pay and must be more than an acknowledgement of an obligation."[3] However, Louisiana jurisprudence provides that the word "promise" does not have to be used ritualistically to confect a promissory note. Fejta v. Werner Enterprises, Inc., 412 So.2d 155, 158 (La.App. 4th Cir.), writ denied, 415 So.2d 953 (La.1982). Instead, the words "to be paid on demand" are sufficient to confect a promissory note. Fejta, 412 So.2d at 158.
In the case at hand, the document states as follows:
Promissory Note

Payable on demand to Joan D. Smith the total sum of $10,652 (ten thousand six hundred and [sic] fifty-two dollars) against [sic] property of John G. McKeller, 5.47 acres on Antioch Road and bordered by Claycut Bayou and Kennedy Cooper Property. The said acres are located in Sec. 47, T-8-S, R-2-E, and Sec. 61, T-7-S, R-2-E, East Baton Rouge Parish, Louisiana. (Copy of tract plot plan attached)
The writing is followed by the signatures of Joan D. Smith and John G. McKeller. Further, the document indicates that it was sworn to and subscribed before a notary, William T. Adcock, on May 16, 1983. Obviously, the document is not in the ordinary form of a promissory note.
Although Smith correctly asserts that the document is not a negotiable instrument, because it is not payable to the order of bearer, a document does not have to be negotiable to be classified as a promissory note. The issue of negotiability would be important only if the document had been transferred to a third party. Hence, because this action was brought by Smith, the original holder, we need not address the question of whether the document is a negotiable instrument. Instead, the pertinent question is whether the document is a promissory note, which is subject to a five year prescriptive period.
Ignoring the title affixed to the document, we find that the substance of the document contains the elements of a non-negotiable promissory note. The substance of the document *1196 evidences an unconditional undertaking by John G. McKeller to pay Joan D. Smith $10,652.00. The employment of the words "payable on demand" conveys more than the substance embodied by an acknowledgement.
The document language indicating that the specified sum is payable against the described property of John G. McKeller does not make the promise conditional. In Muhoberac v. Saloon, Inc., 210 So.2d 572, 574 (La.App. 4th Cir.), writ denied, 252 La. 844, 214 So.2d 164 (1968), the court held that before a promise is found to be conditional, the wording must convey that "payment is confined or limited `only' to a particular fund." We find that the document constitutes an unconditional promise to pay despite the reference to property from which the deceased planned to extract payment. See, e.g. Southern Baptist Hospital v. Williams, 89 So.2d 769, 771 (La.App.Orl.Cir.1956). In other words, we find that the document does not specify a condition on which, and only on which, payment is dependent.
We are not impressed with Smith's argument that the promissory note was drafted as a means of effectuating acknowledgment of a loan of money, thereby creating a ten year prescriptive period. To give effect to such an argument would transform every promissory note into an "acknowledgment," circumventing the legislature's will expressed in La.Civ.Code art. 3498. Hence, we decline to vest Smith with greater rights than those afforded to her by the legislature simply because the draftsmanship of the note is less than perfect. Accordingly, because the document is a promissory note, which is subject to the five year prescriptive period specified in La.Civ.Code art. 3498, Smith's argument that it is merely an acknowledgment is without merit.

II
The McKellers claim that Smith's cause of action is prescribed on the face of her petition. The McKellers illustrate that prescription on a "demand note" commences to run on the date of the note's execution. Accordingly, the McKellers argue that because the document is a "demand note" which was executed on May 16, 1983, Smith's cause of action had prescribed more than three years before she brought this action. We agree.
As previously stated, La.Civ.Code art. 3498 provides that actions on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. "When a note is payable on demand, prescription runs from the date of execution of the note." Cambre v. Gerald, 246 So.2d 73, 74 (La.App. 4th Cir.1971). Stated differently, prescription commences to toll on a demand note on the date of its execution, not the date of demand. Johnston v. Johnston, 568 So.2d 567, 568 (La.App. 5th Cir.), writ denied, 571 So.2d 655 (La.1990).
As a general rule, the burden of proving the peremptory exception raising the objection of prescription is upon the party pleading it. Houston General Insurance Company v. Commercial Union Insurance Company, 612 So.2d 787, 789 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La. 1993). However, where the plaintiff's cause of action is prescribed on the face of the petition, the plaintiff bears the burden of proof to rebut the plea of prescription. Blanchard v. Reeves, 469 So.2d 1165, 1167 (La.App. 5th Cir.), writ denied, 476 So.2d 347 (La.1985).
The promissory note was executed on May 16, 1983. Prescription began to run on that date. Thus, Smith's petition is prescribed on its face because she failed to file action on the note before prescription accrued in May 1988, approximately one and a half years before the deceased's death. Accordingly, the burden shifted to Smith to rebut the McKellers' exception of prescription.

III
Alternatively, Smith claims that if the document is subject to a five year prescriptive period, prescription was interrupted because the deceased had acknowledged the indebtedness in the past. Furthermore, Smith claims that the McKellers "acknowledged" the indebtedness by listing it in the detailed descriptive list as "contested." Additionally, Smith claims that one heir, John C. McKeller, *1197 "acknowledged" the indebtedness, evidenced by the taped conversation.
However, the McKellers claim that because Smith's cause of action is prescribed on the face of her petition, and Smith made no showing that prescription was interrupted prior to accruing or had been renounced after it accrued, the trial court should have sustained their peremptory exception of prescription and dismissed Smith's action. We agree.
In Lima v. Schmidt, 595 So.2d 624, 628 (La.1992), the supreme court recognized that suspension, interruption, and renunciation are the three theories under Louisiana law upon which a plaintiff may rely to establish that the claim is not barred by prescription. Acknowledgment is a means of interrupting prescription. Lima, 595 So.2d at 631. However, the supreme court cautions that "[a]cknowledgment and renunciation differ in both substance and legal effect."[4]Lima, 595 So.2d at 631. Thus, because of the differences between the two, "renunciation is subject to more stringent requirements than acknowledgment." Lima, 595 So.2d at 631.
The codal provisions and the related jurisprudence governing renunciation are clear. La.Civ.Code art. 3449 provides that "[p]rescription may be renounced only after it has accrued." Hence, once prescription accrues it cannot be interrupted. Noggarath v. Fisher, 557 So.2d 1036, 1037 (La.App. 4th Cir.1990). Furthermore, La.Civ.Code art. 3450 provides that "[r]enunciation may be express or tacit," and that "[t]acit renunciation results from circumstances that give rise to a presumption that the advantages of prescription have been abandoned." "A tacit renunciation results from a fact which gives a presumption of the relinquishment of the right acquired by prescription."[5]Succession of Aurianne, 219 La. 701, 53 So.2d 901, 903 (1951).
In Queen v. W. & W. Clarklift, Inc., 537 So.2d 1214, 1216 (La.App. 4th Cir.1989), the court held that to be effective, renunciation of accrued prescription "must be unequivocal and takes place only when the intent to renounce is clear, direct, absolute and manifested by words or actions of the party in whose favor prescription has run." Thus, "[t]here must be a new promise made to pay the debt in order to nullify accrued prescription." Queen, 537 So.2d at 1216 (emphasis added). Accordingly, "[a] new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued." Bordelon's, Inc. v. Littell, 490 So.2d 779, 781 (La.App. 3d Cir.1986). Although the old debt is extinguished, the natural obligation remains, supplying consideration for the new promise.[6]Queen, 537 So.2d at 1216.
In Richard Guthrie & Associates v. Stone, 562 So.2d 1071 (La.App. 4th Cir.), writ denied, 567 So.2d 107 (La.1990), the court addressed the question of whether the debtor acknowledged his obligation before prescription accrued. Allegedly, the debtor made the statement that he would "see to it that the bill was paid." Stone, 562 So.2d at 1072. Assuming that the debtor made such a statement, the court held that the "evidence was not clear, specific and positive enough to *1198 show an acknowledgement of the debt."[7]Stone, 562 So.2d at 1072.
From the record before us, we find no evidence indicating that Smith proved that the deceased acknowledged the alleged indebtedness before prescription accrued.[8] Furthermore, for the reasons stated above, we do not believe that the document equates to an acknowledgment. Moreover, we do not believe that the McKellers' inclusion of the debt in the detailed descriptive list served to interrupt prescription because prescription had already accrued when the list was drafted. Additionally, we do not believe that the inclusion of the debt in the detailed descriptive list served to interrupt prescription because the mere recognition of a disputed claim is not sufficient to constitute an acknowledgment. Finally, we do not believe that the inclusion of the debt in the detailed descriptive list constitutes a renunciation of the benefits of accrued prescription, especially when the debt was marked as contested.
Smith relies heavily on the taped conversation that she had with one of the deceased's heirs, John C. McKeller, to buttress her claim that the debt owed to her was "acknowledged." Because we hold that the debt in this case has prescribed, it is impossible for prescription to be interrupted by acknowledgment. Instead, the effects of accrued prescription can be nullified only by renunciation.
Despite Smith's characterization of the taped conversation with John C. McKeller as an "acknowledgment," we have reviewed the taped conversation to establish whether the substance of John C. McKeller's statements can be classified as a renunciation of the accrued prescription.
Regarding the money the deceased allegedly owed to Smith, Smith asked John C. McKeller if she was going to be paid after the succession was closed and the deceased's property was sold. John C. McKeller replied, "Of course, that's the way it was always told to me." Furthermore, John C. McKeller stated that his father made it a "common fact" about the debt, meaning that all three sons knew about the debt. Additionally, John C. McKeller apparently underscored the condition that Smith was to be paid if the property was sold. Moreover, he stated that they did not intend to sell the property until their mother died.
We cannot say that the statements made by John C. McKeller amounted to a clear, direct, and absolute intent to renounce the accrued prescription on the alleged debt. Because a new promise was not made to pay the debt, a new binding obligation was not created to nullify the accrued prescription. Further, in light of the court's treatment of the quoted statement allegedly made by the debtor in Stone, we cannot say that John C. McKeller's statement was sufficient to constitute a renunciation of accrued prescription. Hence, if a debtor's statement that he would "see to it that the bill was paid" is not sufficient to constitute an acknowledgment, then we believe that John C. McKeller's statements cannot constitute a renunciation because renunciation is subject to greater requirements.

CONCLUSION
We hold that the document executed by the deceased is a non-negotiable promissory note, that the note is payable on demand, that Smith's cause of action is prescribed on the face of her petition, and that Smith failed to carry her burden of proof that prescription was interrupted or renounced. Accordingly, the trial court erred by not sustaining the McKellers' peremptory exception of prescription.

*1199 DECREE
For the reasons expressed above, the judgment of the trial court overruling the McKellers peremptory exception of prescription is reversed. Smith's action on the alleged debt is dismissed. Smith is taxed with all costs of this appeal.
REVERSED AND RENDERED.
NOTES
[1] La.Civ.Code art. 3498 provides, in part that "[a]ctions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years."
[2] La.R.S. 10:3-104 was revised by Acts 1992, No. 1133, § 3, effective January 1, 1994.
[3] However, La.R.S. 10:3-102(1)(c) was also revised by Acts 1992, No. 1133, § 3, effective January 1, 1994. The subject matter of former La. R.S. 10:3-102(1)(c) appears in La.R.S. 10:3-103(a)(9), which provides, in part, that "`[p]romise' means a written undertaking to pay money signed by the person undertaking to pay." Further, La.R.S. 10:3-103(a)(9) concludes that "[a]n acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation."
[4] "Substantively," the supreme court provides that "acknowledgment is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course." Lima, 595 So.2d at 631. On the other hand, "renunciation is the technical term designating the abandonment of rights derived from prescription that has accrued." Lima, 595 So.2d at 631. "In legal effect," the supreme court provides that "acknowledgment interrupts prescription and erases the time that has accrued, with prescription recommencing anew from the date of interruption." Lima, 595 So.2d at 631. However, "renunciation obliterates the effect of prescription that has run." Lima, 595 So.2d at 631.
[5] The 1982 Revision Comments (c) and (d) of La.Civ.Code art. 3449 provide that renunciation "is a technical term designating the abandonment of rights derived from an accrual of prescription" which does not require formality or acceptance by the other party.
[6] La.Civ.Code art. 1762 is illustrative of circumstances giving rise to a natural obligation. Accordingly, La.Civ.Code art. 1762(1) provides that a natural obligation exists "[w]hen a civil obligation has been extinguished by prescription or discharged in bankruptcy."
[7] In Stone, for the purpose of determining acknowledgment, the court stated that "the recognition of the mere existence of a disputed claim is not such an acknowledgment as will effect an interruption of the running prescription." 562 So.2d at 1072. Instead, the court provided that the acknowledgment must be paired with a clear declaration of intent to interrupt the running prescription. Stone, 562 So.2d at 1072.
[8] Assuming that the deceased made statements acknowledging the indebtedness, pursuant to La. R.S. 13:3721, that evidence would be inadmissible to prove such because Smith did not bring action within one year of the deceased's death.