780 So.2d 1224 (2001)
Dorothy Hughes McGILL, et al., Plaintiffs-Appellants,
v.
Roy E. THIGPEN, III, et al., Defendants-Appellees.
No. 34,386-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*1226 Bethard & Bethard, by James G. Bethard, Coushatta, Counsel for Appellants.
Joey W. Hendrix, Shreveport, Counsel for Appellees.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, J.
In this suit to foreclose on immovable property, the trial court sustained an exception of prescription and dismissed the plaintiffs' claims.[1] For the reasons set forth herein, we affirm the trial court's judgment.

FACTS
This matter arises from the plaintiffs' efforts to foreclose on immovable property through enforcement of a promissory note secured by the pledge of a collateral mortgage. The plaintiffs are owners of an undivided one-half interest in an 80 acre tract of land described as the "East ½ of the Southwest ¼ of Section 12, Township 17 North, Range 11 West, Bossier Parish, Louisiana." According to plaintiffs' petition, the other one-half interest in the land described above is owned by Greater Atlantic & Pacific Investment Group, Inc., formerly Thigpen Land Corporation, Inc. (hereinafter "TLC"). TLC's interest in the 80 acre tract of land is subject to collateral mortgages which have been pledged as security for the debts of another, namely, Thigpen Estate, Inc., (hereinafter "TEI"). The following events led to the plaintiffs' current predicament.
On March 3, 1987, TEI executed a promissory note (referred to hereinafter as the "hand note") for $115,000 to Commercial National Bank, payable on April 27, 1987. The hand note was signed by Roy E. Thigpen, III, as president of TEI, in blanks for both the maker of the note and the endorser. The hand note was secured by the pledge of two collateral mortgage notes pursuant to collateral pledge agreements. The first collateral mortgage note, dated May 26, 1982, was by TLC for $50,000 payable on demand to any future holder. This same note was signed by Roy E. Thigpen, III, as president of TLC, and was paraphed ne varietur to identify it with a mortgage of the same date. The second collateral mortgage note, dated February 29, 1984, was also by TLC and signed by Roy E. Thigpen, III. The note was for $120,000 payable on demand to Roy E. Thigpen, III, and endorsed by Roy E. Thigpen, III. The second collateral mortgage note was also paraphed ne varietur to identify it with a mortgage of the same date, February 29, 1984. Pursuant to a collateral pledge agreement, dated March 9, 1984, in favor of Commercial National Bank, the two collateral mortgage notes, along with other security, were pledged to secure the debts of TEI up to $10,000,000. The collateral pledge agreement was signed by pledgor, Roy E. Thigpen, III for TLC. A second collateral pledge agreement, dated May 21, 1984, in favor of Commercial National Bank, involved the pledge of the February 29, 1984 promissory note for $120,000 to secure the indebtedness of TEI up to $10,000,000. This collateral pledge agreement was also signed by Roy E. Thigpen, III, for TLC.
On February 25, 1999, First American National Bank operating as Deposit Guaranty National Bank, successor by merger with Commercial National Bank, assigned all of its interests in the aforementioned instruments to the plaintiffs herein. Thereafter, on March 17, 1999, plaintiffs filed a petition styled "Suit To Foreclose On Immovable Property." The petition named the following persons as defendants: Roy E. Thigpen, III; Desoto Liquidation, Inc., formerly TEI; and Greater Atlantic & Pacific Investment Group, Inc., formerly TLC. According to the petition, no payments were made on the hand note and no credits are due. Plaintiffs admit in the petition that the originals of the instruments which they *1227 purport to hold and enforce have been lost. Attached to the petition is an affidavit by Robert C. Grider, a vice president of First American National Bank, explaining that in the course of mergers and acquisitions involving the banks, the location of the instruments involved in this matter changed numerous times and have been either accidentally lost or destroyed. Because the originals of the instruments at issue are unavailable, plaintiffs sought to enforce their claims and effect seizure of the property through ordinary process utilizing La. R.S. 13:3740 and 3741, rather than through executory process.
In response to the plaintiffs' petition, the defendants filed the peremptory exception of prescription. The defendants asserted that the plaintiffs' cause of action, which is subject to a prescriptive period of five years, accrued more than five years prior to commencement of their suit. The defendants also based their claim of prescription on the plaintiffs' admission that no payments had been made on the promissory notes. After a hearing, the trial court granted the exception and dismissed the plaintiffs' claims in a judgment rendered May 2, 2000. The plaintiffs then filed the instant appeal.

DISCUSSION
A collateral mortgage is a form of conventional mortgage which developed in Louisiana's jurisprudence through the recognition that one can pledge a note secured by a mortgage to secure another debt. First Guaranty Bank v. Alford, 366 So.2d 1299 (La.1978). The collateral mortgage is comprised of three documents. First, there is a promissory note, referred to also as a collateral mortgage note or a ne varietur note. Second, there is an act of mortgage, also referred to as the collateral mortgage, which secures the collateral mortgage note. Third, there is an indebtedness evidenced by a promissory note, also referred to as the hand note, for which the collateral mortgage note is pledged as security. First Guaranty Bank v. Alford, supra; Ruston State Bank v. Colvin, 28,490 (La.App.2d Cir.6/26/96), 679 So.2d 162, review denied, 96-1869 (La.10/25/96), 681 So.2d 375. No money is directly advanced on the collateral mortgage note which is paraphed to identify it with the act of mortgage. Instead, the collateral mortgage note and the mortgage securing it are pledged to secure a debt evidenced by the hand note. First Guaranty Bank v. Alford, supra.
Since the collateral mortgage note and hand note are promissory notes, they are subject to a prescriptive period of five years as provided in La. C.C. art. 3498.[2] Both collateral mortgage notes at issue in the instant case are demand notes. Prescription on a note payable on demand runs from the date of execution of the note. Security Bank v. Frost, 524 So.2d 937 (La.App. 2d Cir.1988); Smith v. McKeller, 93-1944 (La.App. 1st Cir.6/24/94), 638 So.2d 1192. The collateral mortgage notes in the instant case were executed on May 26, 1982 and February 29, 1984, respectively. As such, these notes appear to be prescribed. Similarly, *1228 the hand note which was payable on April 27, 1987, also appears to be prescribed.
The party pleading the peremptory exception of prescription bears the burden of proof. However, where the plaintiff's cause of action is prescribed on the face of the petition, the plaintiff bears the burden of rebutting the plea of prescription. Security National Partners v. Kothe, 96-2410 (La.App. 1st Cir.11/7/97), 703 So.2d 101; Smith v. McKeller, supra. In the instant case, the plaintiffs' cause of action appears to be prescribed on the face of their petition. Accordingly, the burden is on the plaintiffs to overcome the defendants' plea of prescription. The plaintiffs have failed to meet this burden.
In filing the instant suit, plaintiffs sought to effect a seizure and sale of the property mortgaged as security for the collateral mortgage note (ne varietur note) by enforcing the obligation evidenced by the hand note. A mortgage is accessory to the obligation that it secures and may be enforced only to the extent that the obligation it secures may be enforced. See La. C.C. art. 3282. On rehearing in Kaplan v. University Lake Corp., 381 So.2d 385 (La.1979), the Louisiana Supreme Court held that upon prescription of a collateral mortgage note secured by a mortgage, no outstanding mortgage remains against the property. Consequently, upon prescription of the collateral mortgage note which secures a hand note, the hand note reverts to a purely personal obligation of its maker and no viable claim remains against the mortgaged property subject to the prescribed collateral mortgage note. Kaplan v. University Lake Corp., supra. In reaching this conclusion, the supreme court cited with favor the following passage from M. Nathan & G. Marshall, The Collateral Mortgage, 33 La. L.Rev. 497:
The ne varietur note itself can prescribe, and being a demand note, the prescriptive period on the ne varietur note is five years. For that reason, until recently, it has been the customary practice to have the mortgagor sign a written acknowledgment on the ne varietur note within five years after execution of the note (and thereafter to repeat the procedure within five year periods) to prevent prescription from running. If he failed to do so, the ne varietur note prescribed, and while the hand note would nonetheless remain a valid obligation, it would no longer be secured by a mortgage and would simply reflect an unsecured debt (not "unsecured" legally, but unsecured practically in the sense that the security is virtually worthless, being the pledge of a prescribed note.).
33 La. L.Rev. 497, 508.
From our review of the record, we find no evidence of any written acknowledgment of the collateral mortgage notes that would have interrupted the running of the prescriptive period. Additionally, plaintiffs have admitted in their petition that there have been no payments on the hand note. Since no such payments have been made, prescription would not have been interrupted on the collateral mortgage notes as provided in La. R.S. 9:5807.[3] We find that the collateral mortgage notes of May 26, 1982 and February 29, 1984 are prescribed on the face of the plaintiffs' petition and that no viable claim remains against the land that is subject to the *1229 mortgages securing the collateral mortgage notes. Consequently, plaintiffs are barred from obtaining the relief sought, namely, the seizure and sale of the property subject to the mortgage.
We note the central argument of the plaintiffs to be that the trial court erred in failing to find that the constant acknowledgment doctrine applies and that the trial court erred in ruling that the hand note prescribed. However, as previously mentioned, the relief which plaintiffs seek is the seizure and sale of the property mortgaged as security for the collateral mortgage notes. We have concluded that such relief is not available due to the prescription of the collateral mortgage notes. Thus, even if the hand note has not prescribed, it remains a purely personal obligation of the maker and is no longer secured by the mortgage.
The constant acknowledgment doctrine is the long-standing and well-recognized rule of law that prescription does not run in favor of a debtor whose debt is secured by a pledge as long as the thing pledged remains in the possession of the pledgee. Kaplan v. University Lake Corp., supra; Succession of Picard, 238 La. 455, 115 So.2d 817 (1959); Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956); Cush v. Hailey, 344 So.2d 83 (La.App. 2d Cir.1977); Gulf Coast Bank & Trust Co. v. Donnaud's Inc., 99-1228 (La.App. 5th Cir.4/25/00), 759 So.2d 268; Allen v. Huls, 517 So.2d 188 (La.App. 1st Cir.1987), review denied, 518 So.2d 511 (La.1988). It is not the act of pledge that interrupts prescription. Rather, it is the retention by the pledgee of the thing pledged which serves as a constant acknowledgment of the debt and a renunciation of prescription. Succession of Picard, supra; Cush v. Hailey, supra. Even where a note pledged to secure another note has prescribed, the pledgee's detention of the prescribed promissory note will serve to interrupt prescription on the primary debt. Succession of Picard, supra.
In this instance, however, the notes pledged to secure the debt evidenced by the hand note, as well as the hand note, have been lost. Plaintiffs admit this in their petition to which is attached an affidavit indicating that the instruments referenced in the petition have either been lost or destroyed as a result of various bank mergers. In Succession of Picard, supra, the supreme court noted that the pledged items, which included shares of stock and promissory notes, remained in the possession of the pledgee and had not been lost or destroyed. In Cush v. Hailey, supra, a life insurance policy pledged as security for promissory notes was destroyed in a fire. This court affirmed the dismissal of the plaintiff's claim to enforce the promissory notes on an exception of prescription. Although noting that possession of the pledged item need not be always in the creditor, the court could not conclude that constant acknowledgment of the pledge and interruption of prescription occurred where the pledged item was no longer in existence. Once the pledged item was destroyed, prescription was no longer interrupted by constant acknowledgment.
Because the instruments, including the hand note and collateral mortgage notes, have been either lost or destroyed, we do not find that prescription on the hand note has been interrupted by constant acknowledgment.[4] The resolution precludes our need to address whether the present matter involves the pledge by a third party for the benefit of another or whether such a pledge is sufficient to interrupt prescription on the hand note. Although for reasons other than those expressed by the trial court, we find that the hand note, which was payable on April 27, 1987, is prescribed.

CONCLUSION
For the reasons discussed, we affirm the trial court's judgment granting the peremptory exception of prescription and dismissing *1230 the plaintiffs' claims. Costs are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] The plaintiffs herein who appeal the trial court's dismissal of their claims include Dorothy Hughes McGill, Amber Barnato, Stanley W. Hughes, William W. Hughes, and Micheal Barnato.
[2] La. C.C. art. 3498 provides:

Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.
See also La. R.S. 10:3-118 which provides, in relevant part:
(a) Except as provided in Subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within five years after the due date or dates stated in the note or, if a due date is accelerated, within five years after the accelerated due date.
(b) Except as provided in Subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within five years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of five years.
[3] La. R.S. 9:5807 provides:

A payment by a debtor of interest or principal of an obligation shall constitute an acknowledgment of all other obligations including promissory notes of such debtor or his codebtors in solido pledged by the debtor or codebtors in solido to secure the obligation as to which payment is made. In all cases the party claiming an interruption of prescription of such pledged obligation including a promissory note as a result of such acknowledgment shall have the burden of proving all of the elements necessary to establish the same. For purposes of this Section, a "pledged obligation" shall include any obligation, including a promissory note, in which a security interest has been granted under Chapter 9 of the Louisiana Commercial Laws or the corresponding provisions of the Uniform Commercial Code as adopted in any other state, to the extent applicable.
[4] The record does not indicate when the various instruments were lost. The burden was on the plaintiffs to prove the interruption of prescription. They have not met this burden.