STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


19-91


SUCCESSION OF

BILLY DEAN CAMPBELL


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 12273-A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ELIZABETH A. PICKETT
JUDGE**


Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Candyce G. Perret, Judges.


**AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS.**

**C. Brent Coreil
Attorney at Law
Post Office Drawer 450
Ville Platte, LA 70586
(337) 363-5596
COUNSEL FOR APPELLANT:**
    Jeremy Campbell
    Tara Lafleur
    Damian Campbell

**Marcus L. Fontenot**
**Christopher Ludeau**
**Fontenot & Ludeau, LLC**
**Post Office Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
    **LB Johnson Properties, LLC**
    **LBJ Properties, LLC**

**Chad B. Guidry**
**Attorney at Law**
**Post Office Box 447**
**Kinder, LA 70648**
**(337) 738-2280**
**COUNSEL FOR APPELLEE:**
    **Amanda J. Campbell**

**PICKETT, Judge.**

The decedent's three children from his first marriage appeal two judgments rendered by the trial court regarding their motions to appoint an executor and to traverse the detailed descriptive list filed by their father's surviving spouse. For the reasons discussed herein, we reverse in part, affirm in part, and remand this matter to the trial court with instructions.

## FACTS

Billy Dean Campbell died on June 2, 2016, after a battle with cancer. He had three children during his first marriage: Jeremy Campbell, Tara LaFleur, and Damian Campbell. After his first marriage ended, Billy had one child, John, with Amanda Johnson Campbell whom he subsequently married on December 30, 2009. On April 27, 2017, Amanda filed a number of pleadings, including a petition for probate of Billy's last will and testament, his will, and a detailed descriptive list. The petition requested that Amanda be placed in possession of the legacies Billy made to her in his will and that Billy's children as his "heirs/legatees" "show cause why a judgment of possession should not be rendered sending them and the surviving spouse into possession of [their legacies] in accordance with his will." The trial court probated the will but did not sign the order for Billy's children to show cause why a judgment of possession should not be rendered. Thereafter, on May 12, 2017, Amanda filed a petition for possession of unadminstered testate succession by surviving spouse and a corresponding judgment of possession. The petition did not include a request for Billy's legatees to be ordered to show cause why the judgment should not be granted. On May 15, 2017, the trial court signed the judgment of possession.

Jeremy filed a motion to have the judgment vacated because: (1) Billy's will designated him and Amanda as co-executors of the Estate; (2) no inventory was conducted as indicated in Amanda's petition; (3) the legatees did not accept the estate as required by La.Code Civ.P. art. 3031; and (4) Amanda did not give him notice of the filing as her attorney had previously agreed with his attorney. After a hearing, the trial court annulled and vacated the "Judgment of Possession of Un-Administered Testate Succession by Surviving Spouse."

Thereafter, Jeremy filed a motion to be appointed independent executor, asserting that Amanda had "administered the assets of the estate and continues to operate business of the estate known as Campbell's Trailer Park, L.L.C., without the authority of being named as an Independent Executrix and without [c]ourt authority." Jeremy also filed a motion to traverse in which he asserted that Amanda's detailed descriptive list contained numerous errors with regard to assets and three debts identified as being owned and/or owed by the Estate.

Amanda filed an answer and reconventional demand opposing Jeremy's motion to be appointed independent executor and requesting that she "be placed into possession of (only) her bequest without the need for administration." If the trial court held that an administration was necessary, she sought to be named the sole independent executor, or alternatively, to be named co-independent executor with Jeremy.

Amanda's detailed descriptive list included four debts. On July 20, 2017, after the trial court vacated and annulled the judgment of possession, two of the creditors listed in the detailed descriptive list, LB Johnson Properties, LLC and LBJ Properties, LLC, filed proofs of claim. Larry B. Johnson, Amanda's father, filed the two proofs of claim on behalf of these two companies.

Over the course of three days in April, May, and July 2018, the trial court held hearings on the issues raised in Jeremy and Amanda's motions regarding administration of the Estate, the appointment of an executor, and traversal of the detailed descriptive list. On September 11, 2018, the trial court signed a judgment that recognized the three debts challenged in Jeremy's motion to traverse as valid and enforceable against the Estate and ordered that they "be paid from the funds of the [E]state." The judgment also ordered that the proceeds derived from a sale of cattle made by Amanda be disbursed one-third to his four children, jointly, and one-third each to Amanda and Mr. Johnson, individually. The judgment denied Jeremy's requests for an administration of the succession and the appointment of an independent executor. The judgment then recognized Amanda as Billy's surviving spouse and legatee and 100% owner of the family home, owner of one-half of all remaining community property of the Estate and the usufructuary of the other remaining one-half of said community property, until she dies or remarries; it also placed her in possession of said property. The judgment also recognized Billy's children "as his sole heirs and residual legatees" and as:

> a. the naked owners in equal undivided shares of one-half of all the community property left by the decedent, subject to the aforementioned usufruct in favor of Amanda Campbell. . . . [T]he community property left by the decedent is more particularly described on the attached Exhibit A.

> b. the owners in equal undivided shares of all the separate property left by the decedent. The separate property left by the decedent is more particularly described on the attached Exhibit B.

Jeremy filed a motion for suspensive appeal. Mr. Johnson sought to have the appeal dismissed for Jeremy's failure to timely file the motion for appeal and pay court costs. Jeremy's siblings, Tara and Damian, then joined him in his appeal. (Jeremy, Tara, and Damian are hereafter referred to as "the Heirs.") The

Heirs opposed the motion and filed a peremptory exception of prescription in which they argued that Mr. Johnson's businesses' claims were prescribed. After a hearing, the trial court held that the Heirs' suspensive appeal would be maintained if they paid the appeal costs it set; otherwise, it would be converted to a devolutive appeal. The trial court denied the Heirs' exception of prescription. The Heirs posted the appeal costs and proceeded with their suspensive appeal.

## ASSIGNMENTS OF ERROR

The Heirs now assign the following five errors with the trial court's judgment:

1. Does the Judgment of Possession granted by the [trial court] make rulings beyond the issues which had been scheduled for hearing?

2. Was the debt which was allegedly represented by the collateral mortgage and the "copy" of the collateral mortgage note a valid debt of the [E]state?

3. Were the loans made by the Amanda [L.] Johnson's Children's 2009 Trust to Campbell's Trailer Park, L.L.C. a debt of the [E]state?

4. Did the proof of claim and checks filed in the record by LBJ Properties, LLC represent collectible loans made by the decedent and listed as debts of the [E]state?

5. Was the award of one-third (1/3) of the sale proceeds from the sale of cattle by appellee, without court authorization, properly awarded to Larry Johnson, a non-party to the litigation at the hearing?

## DISCUSSION

Our determination of the merits of the last four assignments of error may impact our findings with regard to the first assignment of error. Accordingly, we review these assignments first.

### *Claims Against the Estate*

The three debts listed in Amanda's detailed descriptive list that the Heirs have challenged are two debts awarded against the Estate in favor of Mr. Johnson's

two businesses, LB Johnson Properties, LLC and LBJ Properties, LLC, in the amount of $132,500.00 and $79,051.62, and a debt awarded in favor of the Amanda L. Johnson's Children's 2009 Trust in the amount of $35,000.00.

For ease of discussion herein, we reference LB Johnson Properties, LLC's and LBJ Properties, LLC's claims as being asserted by Mr. Johnson, noting that Mr. Johnson testified that he set up these corporations at the instruction of his accountant to keep the operation of his various businesses separate for accounting purposes. In doing so, we are mindful that the Heirs argue the trial court erred in awarding judgment to these two entities because discrepancies exist between the creditor-debt associations identified in the detailed descriptive list and the evidence presented at trial, e.g., the creditor for the debt on the promissory note identified in the detailed descriptive list is LBJ Properties, LLC, not LB Johnson Properties, LLC, the creditor who sought to prove the debt at trial. For reasons discussed below, we need not address this issue at this time.

The Heirs argue that parol evidence cannot be used to prove claims against a decedent's estate except under specific conditions and that when parol evidence is admissible, the claims cannot be proved by the parol evidence of someone who has a pecuniary interest in the claim.

The Dead Man Statute governs the proof claims against a decedent's estate. La.R.S. 13:3721-3722. The purpose of this statute "is to prevent stale and unfounded claims from being filed against the succession which could have been refuted by the deceased had he been alive." *Succession of Otts*, 400 So.2d 1175, 1177 (La.App. 1 Cir. 1981) (citing *Succession of DeLoach,* 204 La. 805, 16 So.2d 361 (1943); *Taylor v. Bocock*, 276 So.2d 347 (La.App. 2 Cir.), *writ denied*, 279 So.2d 205 (La.1973)).

Louisiana Revised Statutes 13:3721 (emphasis added) provides:

Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, *unless within one year of the death of the deceased*:

(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;

(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;

(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or

(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.

The provisions of this section *cannot be waived impliedly through the failure of a litigant to object* to the admission of evidence which is inadmissible thereunder.

When parol evidence is admissible, La.R.S. 13:3722 (emphasis added) requires that "the debt or liability of the deceased must be proved by the testimony of at *least one creditable witness other than the claimant*, and other corroborating circumstances." In *Savoie v. Estate of Rogers*, 410 So.2d 683, 687 (La.1981), the supreme court held:

This provision implies that the witness whose testimony is necessary for proof of the claim against the deceased cannot be a co-owner of the claim. The purpose of the requirement is to eliminate the possibility of fraud and perjury by witnesses who have a direct pecuniary or proprietary interest in the claim. If the statute were construed to allow the co-owner of a claim to supply a necessary element of proof, the purpose of the requirement would be defeated. Accordingly, we now hold that a person who has a direct pecuniary or proprietary interest in the plaintiff's claim against the deceased person may not serve as his one creditable witness.

6

Moreover, if the claimant is a corporation, the testimony of its officers does not satisfy this requirement. *Fin. Corp. v. Estate of Cooley*, 447 So.2d 594 (La.App. 3 Cir. 1984).

Mr. Johnson and Amanda assert that the Heirs explicitly waived La.R.S. 13:3721's prohibition against parol evidence because they elicited parol evidence in support of their arguments at trial. They point to La.R.S. 13:3721's use of the phrase "waived impliedly." The limitation provided in La.R.S. 13:3722 also addresses the Heirs' complaints; therefore, we need not address this issue.

### *(1) Debt on Promissory Note*

Mr. Johnson's first claim is that on November 5, 2009, Billy executed a promissory note made payable to bearer in conjunction with a $265,000.00 loan that he made to Billy for his purchase of a family home. Pursuant to a subpoena issued by the Heirs, Mr. Johnson produced a copy of a collateral mortgage note dated November 5, 2009, in the amount of $350,000.00 executed by Billy and a copy of a check on the account of LB Johnson Properties dated November 6, 2009, made payable to Billy Campbell in the amount of $265,000.00 signed by Mr. Johnson. Mr. Johnson did not produce the original collateral mortgage note, the original promissory note, or a copy of the promissory note, and he testified at trial that he did not have possession of either note.

Mr. Johnson and the attorney, who prepared the collateral mortgage, the collateral mortgage note, and alleged promissory note, testified regarding the facts surrounding the loan, the preparation of the documents, and the execution of the documents evidencing the debt. The attorney also testified that he did not have possession of the original collateral mortgage note or the promissory note. In

conjunction with this testimony, Mr. Johnson introduced certified copies of the collateral mortgage in the amount of $500,000.00 executed by Billy and the act of sale by which Billy purchased the family home.

In their exception of prescription, the Heirs asserted that Mr. Johnson's claim on the alleged promissory note is prescribed. Mr. Johnson contends that he proved by parol evidence that Billy executed a promissory note in the amount of $265,000.00 and that prescription on the promissory note was interrupted by the pledge of the collateral mortgage note. The trial court denied the Heirs' exception.

*McGill v. Thigpen*, 34,386, pp. 3-4 (La.App. 2 Cir. 2/28/01), 780 So.2d 1224, 1227-28 (citations omitted), explained the use of collateral mortgages and mortgage notes as security for a debt:

> A collateral mortgage is a form of conventional mortgage which developed in Louisiana's jurisprudence through the recognition that one can pledge a note secured by a mortgage to secure another debt. The collateral mortgage is comprised of three documents. First, there is a promissory note, referred to also as a collateral mortgage note or a *ne varietur* note. Second, there is an act of mortgage, also referred to as the collateral mortgage, which secures the collateral mortgage note. Third, there is an indebtedness evidenced by a promissory note, also referred to as the hand note, for which the collateral mortgage note is pledged as security. No money is directly advanced on the collateral mortgage note which is paraphed to identify it with the act of mortgage. Instead, the collateral mortgage note and the mortgage securing it are pledged to secure a debt evidenced by the hand note.

> Since the collateral mortgage note and hand note are promissory notes, they are subject to a prescriptive period of five years as provided in La. C.C. art. 3498. Both collateral mortgage notes at issue in the instant case are demand notes. Prescription on a note payable on demand runs from the date of execution of the note. The collateral mortgage notes in the instant case were executed on May 26, 1982 and February 29, 1984, respectively. As such, these notes appear to be prescribed. Similarly, the hand note which was payable on April 27, 1987, also appears to be prescribed.

> The party pleading the peremptory exception of prescription bears the burden of proof. However, where the [creditor's] cause of

action is prescribed on the face of the petition, the [creditor] bears the burden of rebutting the plea of prescription. In the instant case, the [creditor's] cause of action appears to be prescribed on the face of their petition. Accordingly, the burden is on the [creditor] to overcome the [] plea of prescription.

When a collateral mortgage and collateral mortgage note are used to secure repayment of a promissory note, "[i]t is not the act of pledge that interrupts prescription. Rather, it is the retention by the pledgee of the thing pledged which serves as a constant acknowledgment of the debt and a renunciation of prescription." *McGill*, 780 So.2d at 1229. Prescription is not interrupted, however, if the original collateral mortgage note is not in the creditor's possession. *Id.* In *McGill*, both the promissory note and the collateral mortgage note had been lost; therefore, the court held that prescription on the promissory note was not interrupted by constant acknowledgement.

The same is true here. Even assuming that Mr. Johnson proved the existence of the $265,000.00 promissory note, he does not have the collateral mortgage note in his possession. Therefore, he failed to prove that prescription on the promissory note was interrupted. Under these facts, the promissory note prescribed on November 5, 2014. *Id.*

At best, Mr. Johnson's check payable to Billy proved that he loaned Billy $265,000.00 on November 6, 2009. Claims for money loaned prescribe in three years. La.Civ.Code art. 3494(3). Mr. Johnson acknowledged that Billy had not made any payments on the loan and did not establish with other evidence that prescription on the loan was otherwise interrupted. Accordingly, prescription on this debt was not interrupted, and the trial court erred in denying the exception of prescription and awarding judgment in favor of LB Johnson Properties, LLC for $132,500.00 against the Estate.

9

*(2) Debt for Payments Made to Others*

Mr. Johnson's second claim is based on monies paid by LBJ Properties, LLC to Billy as loans and payments made to various vendors, suppliers, and workmen to sustain Billy and Amanda's personal and business enterprises during Billy's illness and shortly after his death.

To prove this claim, Mr. Johnson presented his testimony and the testimony of others and copies of checks made payable to Billy, various individuals, and businesses. He produced copies of the fronts of more than 130 checks to prove his claim. The dates of the checks range from January 31, 2012, through September 28, 2016. Mr. Johnson's testimony was the only evidence submitted to prove the agreement he had with Billy that he would fund Billy and Amanda's personal and business expenses while Billy was sick. His testimony was the only testimony that established each check was written for the benefit of Billy, the expense each check paid, and the need or purpose for each expense paid.

Bobby Nacio worked for Billy and for Mr. Johnson and testified on behalf of Mr. Johnson. He testified that most of the time, he was contacted by Mr. Johnson to work on Billy and Amanda's rental properties and farm. He also testified that sometimes he asked Mr. Johnson for money to pay expenses associated with work he performed for Billy, but other times he just charged the expenses to Mr. Johnson. Mr. Nacio acknowledged that he and others who worked for Billy ate at local eateries on occasion and charged the meals to Mr. Johnson. He further testified that other workers who performed work for Billy and Amanda were paid by Mr. Johnson. Mr. Nacio also explained that sometimes Mr. Johnson paid him with one check for work he performed on Mr. Johnson's properties and on Billy

10

and Amanda's properties and that sometimes Amanda paid him for work he performed on her and Billy's properties and on Mr. Johnson's properties.

As an owner of LBJ Properties, LLC, Mr. Johnson's testimony cannot be considered to prove this claim. *Savoie*, 410 So.2d 683. The testimony of his other witnesses substantiated that Mr. Johnson wrote some checks to pay expenses on Billy and Amanda's behalf but does not establish with any specificity the dates, amounts, or necessity of the specific expenditures he made on their behalf. Mr. Nacio's and Mr. Johnson's testimony further shows that Mr. Johnson made lump sum payments for expenses and work performed on properties owned by Billy and Amanda and by him. Moreover, Mr. Johnson testified that he kept cattle on Billy and Amanda's farm such that some of the many expenses he claimed with regard to the farm were his expenses. He further explained that he also had rental properties and that some of the many expenses he claimed with regard to rental properties were his expenses.

In *Succession of Moore*, 96-1268 (La.App. 1 Cir. 6/20/97), 696 So.2d 1040, the court considered whether the documentary evidence that consisted of numerous checks, photocopies of checks, and carbon copies of checks was sufficient to prove a creditor's claim for reimbursement of monies paid on behalf of the decedent. The court observed that the memo sections on most of the checks referenced the decedent by name or various insurance policy numbers and concluded that without the creditor's testimony this evidence was insufficient to prove her claim because she failed to produce "coordinating insurance policies, bills, invoices or other documents to substantiate that these checks were actually written to pay the debts of Effie Moore." *Succession of Moore*, 696 So.2d at 1043. The same is true here. Because the admissible testimonial evidence and the documentary evidence do not

11

"substantiate the alleged payments and explain the checks, there is insufficient evidence in the record to prove the extent of the alleged debt." *Id.*

Moreover, the first fifty-nine checks were dated more than three years before Mr. Johnson filed his proof of claim on behalf of LBJ Properties, LLC. The time for filing a proof of claim is governed by La.Code Civ.P. art. 3245(A), which provides:

> A creditor may suspend the running of prescription against his claim for up to ten years:
>
> (1) By delivering personally or by certified or registered mail to the succession representative, or his attorney of record, a formal written proof of the claim.
>
> (2) By filing a formal written proof of the claim in the record of the succession proceeding, if the succession has been opened and no person has been appointed or confirmed as succession representative and no judgment of possession has been signed.
>
> (3) By filing a formal written proof of the claim in the mortgage records of the appropriate parish as provided in Article 2811, in the absence of a proceeding to open the succession.

No succession representative had been appointed before Mr. Johnson filed a formal written proof of claim in the record of this matter on July 20, 2017. *See* La.Code Civ.P. arts. 2826,[1] 3245; *Successions of Marcotte*, 449 So.2d 732 (La.App. 3 Cir. 1984).

Mr. Johnson contends prescription on these checks was interrupted by an agreement between him and Billy by which Billy would not charge him rent for the house or houses Mr. Johnson placed in a trailer park owned by Billy and Amanda. The only evidence on this issue is Mr. Johnson's testimony, which fails to meet the requirements of La.R.S. 13:3722.

---

[1] Louisiana Code of Civil Procedure Article 2826 defines succession representative as including "an administrator, provisional administrator, administrator of a vacant succession, executor, and dative testamentary executor."

The trial court erred in awarding judgment in the amount of $70,051.62 to in favor of LBJ Properties, LLC against the Estate, and it is reversed.

**(3) Debt for Loans by the Amanda L. Johnson's Children's 2009 Trust**

The last debt the Heirs traverse is the claim by the Trust in the amount of $70,000.00 total, with one-half being owed by the Estate. At the traversal hearing, Amanda testified on behalf of the Trust that the Trust made four loans to Campbell's Trailer Park to improve rental property she and Billy owned and that the original balance owed thereon had been reduced by a donation of real estate that she and Billy made to the Trust.

In conjunction with her testimony, Amanda introduced copies of four checks in the amount of $25,000.00 dated March 6, 2014, April 4, 2014, May 28, 2014, and October 22, 2014. Copies of the front and back of each check were introduced into evidence. Two of the checks were made payable to Campbell's Trailer Park, and two were made payable to Campbell's Trailer Park, LLC. Notations on each check indicate that they represented loans. A statement written by the bank on which the checks were drawn was attached to each copy of the checks and shows that the checks were negotiated and the dates on which they cleared the account. The statement reads: "This is written to verify that the temporary check that was written to Campbell's Trailer Park on . . . for $25,000.00 from the Amanda L. Johnson's Children's 2009 Trust cleared on . . . ." Additional information included for each check shows that Amanda is the trustee of the Trust.

In *Succession of Kilpatrick*, 356 So.2d 1083 (La.App. 2 Cir.), *writ denied sub nom. Kilpatrick v. Kilpatrick*, 359 So.2d 198 (La.1978), the court held that a trustee has a pecuniary interest in a claim asserted on behalf of the trust because

13

pursuant to La.R.S. 9:2181, she is entitled to reasonable compensation from the trust estate for services she rendered as trustee.

The documentary evidence, exclusive of Amanda's testimony, established that the Trust loaned Campbell Trailer Park $100,000.00. Amanda testified that she and Billy donated a piece of property valued at $30,000.00 to the Trust in partial payment of the debt. Louisiana law distinguishes between parol evidence used to establish the existence of a debt and parol evidence used to establish the debt's value and allows the use of parol evidence to prove the balance owed on a debt. *Succession of Bonnette*, 188 La. 297, 176 So. 397 (La.1937); *Adams v. Carter*, 393 So.2d 253 (La.App. 1 Cir. 1980), *writ denied*, 398 So.2d 531 (La.1981).

The Heirs sought to have this claim invalidated on the basis that this debt is owed by Campbell's Trailer Park, LLC, not Billy and Amanda personally. Amanda counters that she and Billy did not operate the LLC independently of their personal finances but as an extension of their personal finances for accounting purposes. She explained that they used the LLC for the collection of rents and the payment of expenses. Amanda supported her testimony with copies of tax returns she and Billy filed for the years 2014 and 2015 and a copy of their 2016 return that had been prepared but not yet filed.[2] These returns show that Amanda and Billy included all income, losses, and expenses for their rental properties on their personal tax returns. Additionally, annual property tax statements for the rental properties show that they are assessed as the property of Billy and Amanda.

---

[2] Amanda explained in her August 2017 deposition that she and Billy filed their tax returns in October of each year.

14

For these reasons, the trial court did not err in finding that the Trust's claim against the Estate is valid, and that Amanda's testimony established the balance owed on the debt. Accordingly, the trial court's award against the Estate for $35,000.00 in favor of the Amanda L. Johnson's Children's 2009 Trust Fund is affirmed.

***Award of Cattle Sale Proceeds to Larry Johnson***

In their last assignment of error, the Heirs contend the trial court erred in awarding Mr. Johnson one-third of the proceeds derived from Amanda's sale of the cattle because he did not make a claim for any portion of the cattle proceeds. Mr. Johnson does not address this issue in his appellate brief, and Amanda admits in her appellate brief that the issue was not before the trial court for determination.

Amanda argues, however, that the trial court did not err in ordering disbursement of the proceeds because the issue of whether an administration of the Estate is needed was before the trial court. She reasons, therefore, that the disbursement of the proceeds was an issue for the trial court to address but argues the trial court's disbursement allocations are wrong and seeks reapportionment of the proceeds. As noted by the Heirs, Amanda did not file an appeal, nor did she file an answer to their appeal. An appellee cannot "have the judgment modified, revised, or reversed in part" unless he files a cross-appeal or an answer to the appellants' appeal. La.Code Civ.P. art. 2133. As a result, Amanda's request is not properly before this court.

The Heirs contend that the proceeds represent community property and separate property and that they are entitled to one-half the proceeds awarded to Mr. Johnson. The record does not contain sufficient evidence for us to decide this issue. Accordingly, we remand this issue to the trial court and instruct it to hold a

hearing to determine the classification of the cattle sold and the proceeds derived from those sales as separate property or community property and properly apportion the one-third of the proceeds erroneously awarded to Mr. Johnson.

*Judgment of Possession*

The Heirs contend that the trial court's September 11, 2018 judgment addressed issues that the parties' pleadings did not present for determination and improperly granted a judgment of possession placing Billy's children in possession of their legacies. They do not challenge the trial court's granting judgment in favor of Amanda and placing her in possession of her legacies.

The Heirs further argue the trial court erred in ordering that the monetary awards made therein be paid with "funds of the [E]state" because (1) their motion to traverse presented only the issue of whether the debts identified in the descriptive list were valid, not the payment of the debts; (2) the Estate does not have sufficient funds to pay the debts awarded; (3) the judgment does not name a person responsible for paying the debts; and (4) it did not rule on Jeremy and Amanda's motions to be appointed executor; therefore, no party was designated to pay debts; and (5) in some instances, the judgment's grant to Amanda of the use, control, and management of the Estate's community property entails the Heirs' undivided separate property without her being accountable to them.

We first consider whether the trial court erred in rendering a judgment of possession without requiring an administration of the Estate. The Heirs argue that because all of Billy's legatees did not accept the succession as required by La.Code Civ. P. art. 3031, the trial court's judgment improperly sent them into possession of their legacies without an administration of the estate. The Heirs contend that the trial court did not follow the mandate of La.Code Civ.P. art. 3031(A), which only

allows "all the legatees" in a testate succession to be put "into possession of their respective legacies without an administration of the succession . . . if each of them is . . . competent . . . and *accepts the succession*, and none of the creditors of the succession has demanded its administration." (Emphasis added.) Louisiana Code of Civil Procedure Article 3033 further provides, in pertinent part: "the legatees may be sent into possession only if the person named in the testament as executor joins in the petition thereof." Amanda's petition for possession and the evidence presented at the hearing do not satisfy these requirements.

The trial court has authority to issue a judgment of possession "only when an examination of the petition and review of the entire record clearly reveals entitlement to possession." *Succession of Johnson*, 97-1238, p. 5 (La.App. 5 Cir. 5/27/98), 712 So.2d 1054, 1056. Amanda argues the trial court properly exercised its discretion in denying the Heirs' claim that Billy's succession should be placed under administration. *See Succession of Alstock*, 230 La. 167, 88 So.2d 14 (1956). Such discretion is not unlimited, however, and a trial court cannot place legatees in possession of their legacies if all legatees do not join in the ex parte petition and unconditionally accept the succession. *Succession of Choplin*, 94-37 (La.App. 3 Cir. 10/5/94), 643 So.2d 890; *Succession of Browne*, 142 So.2d 494, (La.App. 2 Cir.1962), *aff'd*, 244 La. 36, 150 So.2d 555 (1963).

The trial court's judgment is reversed with regard to its placement of Billy's children in possession of their legacies and denial of the Heirs' request for administration.

## DISPOSITION

For the reasons discussed herein, we reverse the trial court's monetary awards in favor of LB Johnson Properties, LLC; LBJ Properties, LLC; and Larry

B. Johnson.  We also reverse the placement of Billy's children in possession of their legacies and the denial of the Heirs' request for administration.  The award in favor of the Amanda L. Campbell's Children's 2009 Trust is affirmed.

This matter is remanded to the trial court for a hearing to determine the classification and award of that portion of the proceeds derived from the cattle sales as separate property or community property formerly awarded to Larry B. Johnson.  The trial court is further instructed to order an administration of the Estate and to appoint Amanda and Jeremy co-executors as provided in Billy's will.

Court costs are assessed one-quarter each to LB Johnson Properties, LLC and LBJ Properties, LLC and one-half to Amanda Campbell, individually.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**