McCALEB, Justice.
 

 Plaintiffs, heirs.of Mrs. Viola M. Scott, instituted this suit against Mrs. Ruby Jones Corkern, widow of Dr. Ronald E. Corkern, individually and as natural tutrix of her two minor children, on five promissory notes executed by the late Dr. Corkern in favor of the late Mrs. Viola M. Scott totalling $2,300, each note bearing 4% interest from its date. Plaintiffs are claiming the sum of $5,029.20, this being the alleged amount of the principal and interest due on the notes, plus attorney’s fees.
 

 Plaintiffs’ petition, as amended, alleges that on-August' 27, 1929, Mrs. Viola M. Scott entered into a contract with R. 'G. Corkern and his son, Ronald E. Corkern, whereby Mrs. Scott agreed to loan funds for the purpose of financing the medical education of Ronald E. Corkern up to the amount of $2,500 during the four years following the date of said agreement and that, to secure the payments of said loans, Ronald E. Corkern pledged and/or assigned unto Mrs. Viola M. Scott a certain life insurance policy in the amount of $2,000, issued by the Pan-American Life Insurance Company on the life of Ronald E. Corkern, with the designation of Mrs. Scott as beneficiary. Pursuant to the terms of the agreement, loans were made from 1929 through 1934 in the total amount of $2,300.
 

 To this petition defendant, appearing individually and as tutrix of her two minor children, interposed a plea of prescription of five and ten years in which she denied that the aforesaid insurance policy had ever been pledged to Mrs. Scott to secure the payment of the’notes and averred that it remained at all times in the physical possession of her late husband. After a trial on this plea, the judge, being of the opinion' that the action was barred by the prescription of five years, dismissed the suit.
 
 [1]
 
 Plaintiffs have appealed.
 

 In this Court, plaintiffs are asserting that the insurance policy of Dr. Corkern was' pledged to Mrs. Scott as security for the payment of all amounts for which he would become indebted to Mrs. Scott under the agreement of August 27, 1929 and that, this-
 
 *373
 
 • being so, prescription has never accrued on the obligations sued on as the existence of the pledge operated to suspend or interrupt the running of prescription. In this connection, we take notice at the outset of plaintiffs’ indefinite allegation in their amended petition that the insurance policy . was “pledged and/or assigned to the said • Mrs. Viola M. Scott * * * In view of their contention here, we take it that plaintiffs have either abandoned or at least are 'not pressing the claim that the policy was* assigned to Mrs. Scott for it is obvious that, if it. was assigned, the policy became her property and could not be regarded as a 'pledge effecting an interruption of prescrip- • tion.
 

 The contracts of pledge and assignment are entirely different and produce ■varied legal results. Assignment or trans- ■ £er of credits and other incorporeal rights .is. a species of sale and.is treated as such ,in our Civil Code, being found in Chapter 12 of Title VII' (“Of Sale”). Article 2642 of the Civil Code provides that delivery of an assignment takes place as between transferrer and transferee by the giving of title. Accordingly, a vesting of title in the trans- ' feree is essential to an assignment. See Strudwick Funeral Home v. Liberty Ind. Life Ins. Co., La.App., 176 So. 679 and ■authorities there cited.
 

 On the other hand, a pledge is another sort of contract, having characteristics completely diverse to those of an assignment. It is dealt with under a separate title (Title XX) of our Code and is essentially a contract of security, being defined in Article 3133 as “a contract by which one debtor gives something to his creditor as . a security for his debt”. This is the antithesis of an assignment (in which title pass- . es) for, in the contract of pledge, the debtor ■retains the title of the thing which he places, either actually or constructively, in .the hands of his creditor as security for the .payment of the debt. See Article 3166 of the Civil Code. Hence, it is impossible to have an assignment and a pledge of the ■ same thing at the same time. And this, notwithstanding the recent decision to the contrary of the Court of Appeal, Second Circuit, In re Pan American Life Insurance Company, 88 So.2d 410, a concursus proceeding for the determination of the ownership of the proceeds of the same insurance policy involved herein, where it was held that the agreement between Dr. Corkern .and Mrs. Scott was a contract of assignment as well as a pledge of the policy.
 

 An examination of the contract between Mrs. Scott and Dr. Corkern leaves no doubt whatever that it is a contract of f pledge. It provides, in substance, that Mrs.
 
 *375
 
 Scott, Dr. Corkern and his father have entered into an agreement whereby Mrs. Scott is to lend the younger Corkern up to $2,500 to enable him to obtain a medical education and that he is to give his promissory notes for the particular amounts that are advanced and that, “in order to secure the payment of the sums advanced to him * * * ”, he will make Mrs. Scott beneficiary in a policy of life insurance carried by him in the Pan American Life Insurance Company in the sum of $2,000; that he would continue to pay the premiums thereon and not do any act that would decrease the cash or loan value of the insurance without the consent of Mrs. Scott, who agreed to reimburse his parents or his closest heirs any amount she would receive in the event of his death in excess' of the amount loaned him. In conformity with his promise, Dr. Corkern wrote the insurance company enclosing the policy and effected a change of beneficiary from his mother to Mrs. Scott, directing that the policy be returned to the First National Bank of Oberlin, Louisiana “with instructions to just hold in escrow as they have already been advised concerning this transaction”. The policy was delivered to the bank by the insurer in accordance with these instructions.
 

 In this Court, defendant does not contest that the agreement effected a pledge of the insurance policy. However, her
 
 counsel
 
 maintains that the pledge was extinguished by the occurrence of certain events by which Dr. Corkern obtained possession of the pledged policy, which was found in his safe deposit box after his death. It appears that the holder of the policy, First National Bank of Oberlin, became insolvent during the years of depression and was closed and placed in receivership. No information is available as to the whereabouts of the pledged insurance policy during the time the bank was being liquidated. Upon inquiry after the liquidation was completed, the office of the Comptroller of the Currency, which had supervised the affairs of the bank during its receivership, advised that all books, re6-ords and papers had been destroyed under proper authority on January 30, 1940 and that it had been unable to find any reference to the policy.
 

 Mrs. Scott died on March 1, 1948 and Dr. Corkern died on February 20, 1953. When the bank box of the latter was opened in his succession proceedings, the policy of insurance was found therein but no one knows how or when he obtained possession of it. Mrs. Scott’s name still appeared thereon as beneficiary.
 

 It is the position of defendant’s counsel, as we understand it, that the pledge was extinguished when Dr. Corkern came into possession of the policy. Contra, plaintiffs contend that Dr. Corkern’s possession was a precarious one in which he was acting as a trustee for the pledgee, Mrs. Scott.
 

 We find plaintiffs’ position is sustained by applicable authorities. See Jacquet v.
 
 *377
 
 His Creditors, 38 La.Ann. 863; Foote v. Sun Life Assur. Co. of Canada, La.App., 173 So. 477 and cases there cited, particularly Conger v. City of New Orleans, 32 La.Ann. 1250, where this Court, in determining the validity of a pledge of stock owned by the City in a railroad company, which had never been delivered by the City to the plaintiff but which was perpetually pledged in favor of the bondholders by Act 109 of 1854, said:
 

 “Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee. The debtor himself may, in some cases, be considered as such trustee and be given possession of the thing by him pledged, provided his tenure be precarious and clearly for account of the creditor. The Louisiana doctrine is in perfect accord with both the common, the Roman and French laws.” (Citing a long list of authorities and commentaries from various jurisdictions in support of the statement) .
 

 Thus, it is manifest that the mere circumstance that the pledged insurance policy was found in the possession of the pledgor does not justify the conclusion that the pledge was extinguished and, in the absence of any evidence showing that the parties intended that the pledge be terminated or even that the pledgor considered it terminated, it will be presumed that the possession of the pledgor was precarious or as an agent pro hac vice.
 

 Since we find the pledge to have been presumptively extant between the parties,
 
 [2]
 
 we next inquire as to the effect of the pledge on the running of liberative prescription on the debt evidenced by the notes. It is the well-settled jurisprudence of this state that prescription does not run in favor of the debtor whose debt is secured by a pledge, and that it remains interrupted,
 
 [3]
 
 as long as the thing pledged is in the possession of the pledgee. Citizens’ Bank v. Johnson, 21 La.Ann. 128; Police Jury v. Duralde, 22 La.Ann. 107; Conger v. City of New Orleans, 32 La.Ann. 1250; Latiolais v. Citizens’ Bank, 33 La.Ann. 1444; Citizens’ Bank v. Hyams, 42 La.Ann. 729, 7 So. 700; Meyer Bros. v. Colvin, 122 La. 153,
 
 *379
 
 47 So. 447; Bank of Slidell v. Gause, 157 La. 128, 102 So. 93; Liberty Homestead v. Pasqua, 190 La. 25, 181 So. 801; Pelican State Bank v. Bogle, 202 La. 721, 12 So.2d 793 and Standard Homestead Ass’n v. Horvath, 205 La. 520, 17 So.2d 811, appeal dismissed for want of a substantial Federal question, Mercedes Realty v. Standard Homestead Ass’n, 323 U.S. 666, 65 S.Ct. 53, 89 L.Ed. 542. While several cases state that prescription does not run during the existence of the pledge since the pledge itself is a standing acknowledgment of the indebtedness, see Wilson v. Bannen, 1 Rob. 556; Forstall v. Consolidated Association of Planters, 34 La.Ann. 770; First National Bank v. Bell, 141 La. 53, 74 So. 628; Farmer’s Loan & Mortgage Co. v. Langley, 166 La. 251, 117 So. 137; Waterman v. Dupeire, 180 La. 320, 156 So. 405 and Parlor City Lumber Co. v. Sandel, 189 La. 392, 179 So. 464, the proper view is that it is not the contract or act of pledge that interrupts prescription but rather the detention by the pledgee of the thing pledged, such possession serving as a constant acknowledgment of the debt and hence a constant renunciation of prescription. See Police Jury v. Duralde, supra; Conger v. City of New Orleans, supra; Citizens’ Bank v. Hyams, supra; Liberty Homestead v. Pasqua, supra; Pelican State Bank v. Bogle, supra and Article 3520 of the Civil Code.
 
 [4]
 

 And it is plain, for reasons given earlier in this opinion, that physical possession of the pledge need not be in the creditor himself, it being sufficient that it be in someone who holds for the account of the creditor, even the debtor himself, provided his tenure be precarious and clearly for the account of the creditor.
 

 Since we find in the case at bar that Dr. Corkern held the pledged policy as trustee pro hac vice for Mrs. Scott, as evidenced by the fact that during his unexplainable possession of it
 
 he did no
 
 act with respect thereto which could be considered inconsistent with the pledge agreement,
 
 [5]
 
 the running of prescription on the promissory notes was continuously inter
 
 *381
 
 rupted at least until his death in 1953 and, therefore, the suit is not barred by prescription.
 

 Accordingly, the judgment appealed from is reversed; the exception of prescription is overruled and the case is remanded for further proceedings in accordance with law and consistent with the views herein expressed. The costs of this appeal are to be borne by defendant.
 

 FOURNET, C. J., and HAWTHORNE, J., absent.
 

 [1]
 

 . Article 3540 of the Civil Code provides '• that suits on promissory notes are pre- - scribed' by five years. In this case, more. ' than five years elapsed from the maturity of the notes' to the date on which suit : was filed. ... :■
 

 [2]
 

 . Article 3162 of the Civil Code, requiring actual physical delivery to and possession in the creditor (or a third person) of the pledged movable, credit or other insti'ument in order for the privilege to subsist, is not applicable as between the parties to the pledge.
 

 [3]
 

 . There are decisions by this Court which speak of prescription being
 
 suspended
 
 as long as the pledgee is in possession of the thing pledged. See Citizens’ Bank v. St. Amans, 23 La.Ann. 293, Renshaw v. Stafford, 30 La.Ann. 853 and Villere v. Succession of Shaw, 108 La. 71, 32 So. 196. Such a concept is clearly out of line with Article 3520 of the Civil Code, providing for interruption of prescription by acknowledgment, and with the main body of the jurisprudence.
 

 [4]
 

 . The reason for this rule is founded on the writings of the French commentators, particularly Marcade, Troplong and Duranton (see Marcade, Prescription, p. 146; Troplong, Prescription, No. 534 and Duranton, No. 269) who voice the opinion that it is not the contract of pledge that interrupts prescription but the continuous possession of the thing pledged with the debtor’s consent to such possession that serves as a constant acknowledgment of the debt.
 

 [5]
 

 . Any act from which the conclusion could ' be drawn that the possession of the debt- or was not precarious would suffice to begin the running of prescription. For instance, if Dr. ■ Corkern. had effected a change in benefidary on the policy after .he obtained its possession, it could no longer be said that he was holding it for the account of Mrs. Scott. And, by the same token, the circumstance that be permitted her
 
 to remain
 
 as the named beneficiary of the policy confirms the conclusion that he considered himself to be a precarious possessor.