120 So.2d 301 (1960)
Alfred J. KREPPEIN et al.
v.
Francis J. DEMAREST, Recorder of Mortgages and Frank B. Wood.
No. 21427.
Court of Appeal of Louisiana, Orleans.
April 25, 1960.
Rehearing Denied May 23, 1960.
Certiorari Denied June 29, 1960.
*302 Joseph E. Berrigan, Jr., New Orleans, for plaintiffs-appellants.
Richards & Scott, Charles E. Richards, New Orleans, for Frank B. Wood.
JANVIER, Judge.
The plaintiffs are attempting by this mandamus proceeding to effect the cancellation in the office of the Recorder of Mortgages for the Parish of Orleans of an inscription and a reinscription of a mortgage against certain real property which they have inherited from their father and mother. They contend that the reinscription of the mortgage was made too late and that the note which was given has prescribed, and that, as a result, the mortgage no longer is effective and that, therefore, the inscription should be cancelled.
The defendants are the Recorder of Mortgages and Frank B. Wood, the present holder of the note who purchased it in the liquidation proceedings of the Thrift Homestead Association, the original holder.
*303 The principal defendant, Frank B. Wood, filed an exception of no cause of action which was referred to the merits. After a trial there was judgment maintaining the exception of no cause of action and dismissing the suit. From this judgment plaintiffs have appealed and the plaintiffs and the defendant, Frank B. Wood, have asked that, since the matter was considered after a full trial, we render a definitive judgment instead of considering the matter on the exception.
On August 23, 1927, the father and the mother of the plaintiffs bought the property from the Thrift Homestead Association. The consideration was $400.00, all of which was represented by the note involved here and which was secured by the usual homestead mortgage. The only payment made since was $56.20, shown to have been paid on February 5, 1937. The homestead association went into liquidation and on November 26, 1948, the special agent of the homestead in liquidation, under order of court, sold the note to Frank B. Wood. Wood did not receive any other documents or securities of any kind at that time or since. On July 28, 1952, Wood caused the reinscription of the mortgage.
On June 1, 1959, the present plaintiffs-appellants brought this proceeding. Though they at first alleged and contended that the reinscription of the mortgage on July 28, 1952, was not timely effected, they have abandoned that contention and the sole remaining issue is whether the note has prescribed and consequently the mortgage is no longer effective.
Prescription is claimed to result from the effect of Article 3540 of our LSA-Civil Code which provides that actions on notes "are prescribed by five years, reckoning from the day when the engagements were payable." It is conceded that more than five years have elapsed since the last installment payment on the note would have been due, and since the only payment which was made was made more than five years before the filing of the suit and more than five years have elapsed since the present holder of the note acquired it, but it is maintained that prescription has not run its course because of the fact that the note was secured not only by the mortgage of the property but also by the pledge which, under the notarial act, accompanied the making of the note. Just what it was which was pledged is in controversy.
The holder of the note contends that it was the installment book which was issued to the maker of the note and the plaintiffs, owners of the property, contend that it was a stock certificate which was contemplated under the homestead plan of operation.
There is, of course, no doubt that where, to secure payment of a note, there is given in pledge a tangible article, a certificate of stock, or any other security, so long as the pledge continues in existence, prescription does not run. This has been held in innumerable decisions, most recently in Scott v. Corkern, 231 La. 368, 91 So. 2d 569, 572.
Ordinarily, the thing or the security pledged must be given to and must remain in the possession of the pledgee and therefore ordinarily if the article or security is returned to the pledgor, the pledge is no longer effective. It terminates at the moment of the return to the pledgor and prescription on the note which the pledge was given to secure commences to run from that moment. Therefore, the time required for the completion of the period of prescription having run, it becomes necessary to determine just what was pledged and whether the effect of the pledge has continued.
What we have said as to the necessity that the pledged article or security be delivered to the pledgee and that it must remain in his possession has reference, of course, only to the general rule to which there are exceptions. For instance, the pledge does not dissolve if the article is held by someone alse acting for the pledgee and it is also true that the pledgor himself *304 may be agent for the pledgee and may thus be found in possession of the pledged article. That was true in Scott v. Corkern, supra, in which the Court said:
"Thus, it is manifest that the mere circumstance that the pledged insurance policy was found in the possession of the pledgor does not justify the conclusion that the pledge was extinguished and, in the absence of any evidence showing that the parties intended that the pledge be terminated or even that the pledgor considered it terminated, it will be presumed that the possession of the pledgor was precarious or as an agent pro hac vice."
At the time at which the note was executed by the father of the present plaintiffs, homestead associations, by Section 9 of Act 280 of 1916, were expressly granted the right to accept their stock in pledge and to allow it to remain in the possession of the pledgor provided the fact that it was pledged be stamped on the stock certificate.
Section 9. Be it further enacted, etc. That every loan on real estate shall be secured by vendor's privilege and first mortgage * * *, accompanied by a pledge to such association of the shares borrowed upon, and a declaration of such pledge in an authentic act shall create and constitute a full, valid and complete pledge; and the fact of such pledge shall be stamped on the face of the certificate of stock so pledged, whenever such certificate itself is not delivered to and held by such association, * * *."
When Wood acquired the note at the liquidation sale, he was not given and has not since received anything other than the note itself. From this it is argued that since he, the holder of the note, has never himself had possession of anything pledged, the pledge has been dissolved, with the result that prescription has accrued.
If, acting under authority of the statute just quoted, the Homestead permitted the maker of the note (the father of the present plaintiffs) to retain the pledged article, then it was not necessary that Wood, in purchasing the note, should obtain personal possession of the pledged article since, under that statute, the pledged article was held by the maker of the note as agent for the pledgee. We say this with some slight reservation, because we are not at all certain that the statute, which gave to the Homestead Association the right to maintain a pledge even though it should allow the pledgor to retain possession, would give to the Association the right to transfer that right to someone else without requiring that the pledged article be returned to it so that it might in turn be delivered to the person who had purchased the note and who, as a result, would be entitled to actual possession of the pledged article. However, assuming that the purchaser of the note, even without actual possession, would be entitled to the rights which the Homestead originally had it becomes interesting to investigate the question of what was pledged and in whose possession the pledged article was allowed to remain. We say this in spite of language in a footnote on page 377 of 231 La., on page 572 of 91 So.2d of Scott v. Corkern, supra, which reads as follows:
"2. Article 3162 of the Civil Code, requiring actual physical delivery to and possession in the creditor (or a third person) of the pledged movable, credit or other instrument in order for the privilege to subsist, is not applicable as between the parties to the pledge."
In that case the Court found that there was possession by "an agent pro hac vice." Therefore, since there was possession, it was not necessary to state that the requirement that there be actual physical possession in the creditor "is not applicable as between the parties to the pledge."
The statement in the quoted footnote, that there is no requirement of actual possession as between the parties to the pledge, has not met with the approval of the authors *305 of two law review articles. In an article on Pledge, XXXIII Tulane Law Review, at page 74, Professor Ralph Slovenko, says:
"* * * This position is without support. Pledge is a `real contract.' It is formed by the delivery of the thing. The rule is applicable not only with respect to third parties (existence of privilege) but also between the parties (existence of the contract). * * *"
And in support of this statement the author cites statements by several commentators.
In another article entitled "Security Devices" which appears in XVIII Louisiana Law Review, at page 50, Professor Joseph Dainow says that:
"* * * the decision in Scott v. Corkern is a move in the wrong direction because the court treated as valid the pledge of a life insurance policy in the physical possession of the debtor. * * *."
In an English translation by the Louisiana Law Institute of Planiol's Traite Elementaire de Droit Civil, volume 2, Part 2, at page 366, it is said:
"* * * So long as there has not been a handing over of the thing, there may be a contractual or a legal obligation to give a pledge, but there is no pledge. * * *"
In the notarial act itself appears the following:
"And, in order still further to secure said indebtedness, the said purchaser does, by these presents, give in pledge to said Association all the installments now paid and to be paid together with all dividends, present and future, on Four shares of the capital stock of said Association, standing in said purchaser's name, on the books of the Association, represented by Certificate No. ____ Installment Book No. 1006, the certificate for which is delivered to said Association, through its said _____ President, who hereby acknowledges receipt and delivery of same; and the said pledge is hereby made under all the terms and provisions of said above mentioned Charter and By-Laws."
Counsel for the purchaser of the note vehemently asserts that since the space left for the insertion of the number of the certificate of stock was left blank, obviously no stock was issued and the only thing pledged was "Installment Book No. 1006", and that since such book is usually left in the possession of the borrower it must be assumed that it was left in the possession of the maker of the note and that, therefore, he possessed it as agent of the pledgee and that his heirs continued to possess it as agent for the pledgee, purchaser of the note, and that, therefore, the fact that Wood, the holder of the note, does not have that installment book is of no importance.
On the other hand, counsel for the plaintiffs insist that we must assume that a certificate of stock was issued and that, since it is stated in the act of sale that that certificate was delivered to the Association, it must also be assumed that it remained in the possession of the Association and that, since it was not delivered to the purchaser of the note, the pledge has been dissolved because of the lack of possession by the holder of the note.
It should be remembered that in the petition for mandamus plaintiffs alleged that liberative prescription had accrued. This placed on plaintiffs the burden of showing that at least five years had elapsed since there had been a payment or other express recognition of liability on the note. Their burden was successfully borne especially since the holder of the note readily admitted that no payment had been made and that unless it be by the continued effect of the pledge, there had been no tacit acknowledgement of liability on the note.
*306 There was thus transferred to the holder of the note the burden of showing that prescription had not accrued because of something which had effected an interruption.
We feel that authority to the effect that the burden has shifted is almost unnecessary. However, in Lowentritt v. Posey, 5 La.App. 449, the Court of Appeal, Second Circuit, we find a statement so exactly in point that we set it forth:
"When suit is brought on an instrument prescribed on its face and the plaintiff contends that prescription has been interrupted, the burden of proof is upon him to establish that fact."
In Nahigian v. Haddad, 205 La. 1009, 18 So.2d 598, 600, the Supreme Court said:
"As the notes show on their faces that they are prescribed and the plaintiff alleges that there was a waiver of accrued prescription, the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that there was a renunciation of prescription. Waterman v. Dupeire, 180 La. 320, 156 So. 405; Burdin v. Burdin, 171 La. 7, 129 So. 751; and Jelsch v. Laurich, La.App., 187 So. 819."
In attempting to sustain this burden all that the holder of the note has been able to show is that at some time more than thirty years before the filing of the suit and more than twenty years before he acquired the note something was pledged by the maker. He was not able to show exactly what that something was nor whether it remained in the possession of the original pledgee. He admitted that the pledged article had never been in his actual personal possession and he could not show where it was, nor in what capacity it was held, if in fact it continued to exist.
Under these circumstances we feel that, in the absence of a showing that because of the pledge, prescription has not accrued, it must be held that prescription has run its course, and that accordingly the inscription and the reinscription should be cancelled, otherwise the mere fact that at sometime something was pledged to secure payment of the note would create a situation which might forever prevent the accrual of prescription. Such a result cannot be countenanced.
The judgment appealed from is annulled, avoided and reversed, and there is now judgment against the defendants, Francis J. Demarest, Recorder of Mortgages, and Frank B. Wood, and ordering the Recorder of Mortgages for the Parish of Orleans to cancel and erase from the records of his office the inscription and reinscription of the mortgage as they appear, respectively, in M.O.B. 1364, folio 502, and M.O.B. 1847, folio 91, bearing upon the following property:
"Two certain lots of ground in the Seventh (7th) District of the City of New Orleans, in Square bounded by Avenue B, Avenue C, 32nd and Tacoma Streets, designated as lots Nos. 21 and 22 in Square No. 58-A; said lots measure each 20 feet front on 32nd Street and adjoin each other and have a depth of 100 feet; situated in that part of the City known as Westend Subdivision according to a blueprint of said subdivision on file in the office of Joseph A. Blythe, of this City."
All costs are to be paid by defendant, Frank B. Wood.
Reversed.
REGAN, Judge (dissents).
I respectfully dissent.
The sale of a primary obligation superinduces a transfer of all accessory rights thereto, and the pledge designed to secure its ultimate payment.[1]
NOTES
[1] LSA-C.C. Art. 2645; Foster & Glassell Corporation v. Rachal, La.App.1939, 191 So. 584; particularly see Scott v. Corkern, 1956, 231 La. 368, 91 So.2d 569; see also LSA-R.S. 6:766.