859 So.2d 890 (2003)
SECURITY NATIONAL PARTNERS, LIMITED PARTNERSHIP, Plaintiff-Appellee,
v.
Earnest BAXLEY and Carolyn C. Baxley, Defendants-Appellants.
No. 37,747-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2003.
*891 Charles B. Bice, Winnfield, for Defendants-Appellants, Earnest Baxley and Carolyn C. Baxley.
William A. Fogleman, for Plaintiff-Appellee, Security National Partners Limited Partnership.
Robert A. Thrall, for Defendant-Appellee, Assistant U.S. Attorney United States of America.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The makers of a promissory note secured by a collateral mortgage question in this appeal the trial court's grant of summary judgment in favor of a party that was not the named payee of the note. Finding no material issue of fact concerning the plaintiff's right to enforce the promissory note and the mortgage, we affirm that portion of the judgment setting forth the amount of the debt. The remaining portion of the judgment concerning attorney's fees and escrow payments lists no amounts for those items. We therefore reverse that portion of the judgment pertaining to escrow payments and attorneys fees, and remand.

Facts
Security National Partners, Limited Partnership ("Security National") filed suit in November, 2001, against Earnest Baxley and Carolyn C. Baxley, husband and wife ("the Baxleys"), alleging the Baxleys' default on a 1990 loan which had been the subject of a Modification Agreement between the parties dated December 16, 1996. The agreement recited the following:
[The Baxleys] acknowledge that as of September 1, 1996, they are indebted to [Security National] in the principal amount of $134,596.52, plus accrued interest *892 at the rate of 9.00%, for a total balance as of December 1, 1996 of $181,106.92, which indebtedness is evidenced by the Note. (Emphasis added).
NOW, THEREFORE, in consideration of the premises and in order to induce [Security National] to forebear and modify the Note, the parties hereby covenant and agree as follows:
1. [The Baxleys] have requested and [Security National] agrees to accept the sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS, plus interest on the unpaid principal balance at the rate of ten (10%) percent per annum from date until paid. The modified payment schedule is as follows: Thirty-six (36) payments; payments 1 through 12 will be in the sum of $2,450.00 each beginning December 1, 1996 and each subsequent monthly payment will be due on the first day of each month thereafter; payments 13 through 35 will be in the sum of $1,450.00 each and payment 36, the final payment, will be for the entire principal balance plus accrued interest still remaining due and payable.
* * *
9. [Security National] and [the Baxleys] agree that all provisions of the Note and any Collateral Documents not specifically amended herein shall remain in full force and effect.
During the course of the proceedings, the parties stipulated that the Baxleys paid five installments pursuant to the Modification Agreement, with the last payment occurring in 1997.
Security National's petition also alleged that it was the holder of the two promissory notes. The two notes were filed in the record. The first note (hereafter the "Handnote"), for $675,273.81, dated February 22, 1990, was signed by the Baxleys and payable to Jonesboro Federal Savings and Loan Association ("Jonesboro Federal"). The Handnote set forth no provisions for the manner in which it would be paid nor specified an interest rate. The Handnote did state that it was "secured by the pledge of that collateral mortgage note dated February 22, 1990 in the amount of $675,273.81 bearing interest at the rate of 12.00% per annum from date." The Handnote contains no endorsement from Jonesboro Federal or any other party. The second note (hereafter the "Collateral Mortgage Note"), for $675,273.81, dated February 22, 1990, was signed by the Baxleys and payable to "ourselves," on demand. Security National further alleged that the Collateral Mortgage Note was paraphed for identification with a collateral mortgage also executed by the Baxleys on February 22, 1990, in the amount of $675,273.81, and recorded in the mortgage records of Winn Parish.
On November 29, 2001, Security National filed this suit against the Baxleys. The United States was made a necessary party because of two federal tax liens recorded in Winn Parish. Security National prayed for judgment against the Baxleys for $144,378.56 plus interest, fees and costs, and recognition of the collateral mortgage. It further prayed that its mortgage be recognized as superior to the federal tax liens.[1]
Security National moved for summary judgment, submitting affidavit testimony showing that $144,378.56 was owed on the debt. The Baxleys opposed the motion on the ground of various deficiencies in the exhibits evidencing the indebtedness.
*893 Nevertheless, they filed no affidavits or documents in opposition to the motion.
The evidence supporting the motion revealed that the Baxleys filed a voluntary petition for Chapter 11 bankruptcy protection on October 22, 1990.[2] The record contains the plan of reorganization which listed $180,000 as the secured portion of Jonesboro Federal's claim and recognized a 20-year payout pursuant to the plan at 10% interest per annum. The plan designated the remainder of Jonesboro Federal's debt, estimated to be $455,000, as an undersecured claim and listed it among the other unsecured claims.
Thereafter, Jonesboro Federal went into receivership. On June 29, 1992, the Resolution Trust Corporation assigned all of its rights in the Baxleys' notes to Alaska Southern Partners, a Limited Partnership ("Alaska"). During the pendency of the Baxleys' bankruptcy, Alaska obtained a $40,000.00 payment in 1993 on the indebtedness in exchange for its release of one of the two tracts of land encumbered by the mortgage.
An assignment of the Handnote from Alaska to Security National was executed on November 27, 2001. This was long after the time that Security National obtained the Modification Agreement from the Baxleys in December, 1996.
The Baxleys answered the petition, admitting their execution of the Modification Agreement. In an answer to an interrogatory regarding the relationship between the Handnote and the Modification Agreement, the Baxleys stated:
Further answering, affiants state that they were contacted by a company named Security National Partners concerning the indebtedness they owed Jonesboro Federal Savings and Loan and affiants agreed to enter into the modification agreement with Security National Partners, acknowledging they were indebted to Security National Partners for the amount set forth in the modification agreement. Affiants' purpose of entering into the modification agreement was to allow themselves to structure a payment schedule to Security National Partners for the amount Security advised them they owed it and which they believed they could manage to repay.
After a hearing on Security National's motion, the trial court granted summary judgment on January 8, 2003. On the same day as the ruling, the Baxleys filed a peremptory exception of prescription, urging that both notes were prescribed on their face. Although it had already obtained summary judgment, Security National opposed the exception of prescription and appeared at the hearing on March 11, 2003. At the hearing, Security National elicited the following testimony from Earnest Baxley:
Q. On the two documents that are identified as P-2 [Handnote] and P-3 [Collateral Mortgage Note], the notes in this matter, the back of the note that is payable to ourselves, is marked, the note is given in pledge of a debt in the amount of $675,273.81? Do you recall that?
A. Jonesboro Federal?
Q. Yes.
A. Yes.
Q. And that note was given in pledge for the other note, the hand note, which is marked P-2 in this matter?
A. Yes, sir.
*894 Q. And the mortgage that you executed is given to secure that noted marked P-3 as security for that note.
A. Yes, sir.
Q. Did you ever regain possession of these notes?
A. No, sir.
Q. You ever paid the debt represented by these notes?
A. No, sir.
The summary judgment was signed by the trial court on January 13, 2003. The judgment denying the exception of prescription was signed by the trial court on March 12, 2003. It is from these two judgments that the Baxleys appeal.

Discussion
By two non-specific assignments of error, the Baxleys contest the trial court's grant of summary judgment for the money debt and for recognition of the mortgage against their property. Without citation to any authority, they question that Security National has the status as "the holder of the hand note."
The Handnote obtained by Jonesboro Federal is a negotiable instrument. La. R.S. 10:3-104. It set forth an unconditional promise to pay a fixed sum of money, and since it did not set forth any time of payment, the Handnote is considered as payable on demand. La. R.S. 10:3-108(a).
Security National demonstrated its possession of the Handnote by (i) presenting it into evidence, (ii) presenting evidence of a chain of assignments to the Handnote, culminating in Alaska's assignment to Security National, and (iii) proving the Handnote's acknowledgment in the Modification Agreement. Under La. R.S. 10:3-301, Security National is clearly a "person entitled to enforce" the Handnote instrument. First Nat'l Bank v. Carr, 572 So.2d 1106 (La.App. 1st Cir.1990); FGB Realty Advisors, Inc. v. Riedlinger, 95-2276 (La. App. 4th Cir.4/3/96), 671 So.2d 560, writ denied, 96-1299 (La.7/1/96), 676 So.2d 101; see also La. R.S. 10:3-203 regarding transfer of an instrument. Whether a holder in due course, holder or nonholder in possession, the above jurisprudence and Section 3-301 of Louisiana's Commercial Laws (La. R.S. Title 10) indicate that Security National may enforce the Baxleys' obligation under the Handnote. It is incumbent upon the Baxleys to allege and prove the existence of any claim or defense to the Handnote, and in response to the motion for summary judgment, they have made no such allegations or proof.
The Baxleys further question whether the Note referenced in the Modification Agreement was clearly identified in the evidence as the Handnote. Security National brought this suit on the Handnote debt as modified by the actions of the bankruptcy court and the Modification Agreement. The Baxleys' answer to the interrogatory admitted the relationship between the Modification Agreement and the Jonesboro Federal indebtedness. They presented no opposition evidence disputing their agreement to alter the repayment of that indebtedness under the terms of the Modification Agreement.
Additionally, the Baxleys vaguely question Security National's right to maintain its security rights by virtue of the pledged Collateral Mortgage Note. The Collateral Mortgage Note is a bearer instrument which was pledged to secure the Handnote. Security National is the holder of the Collateral Mortgage Note and as indicated above has established itself as the party entitled to enforce the indebtedness represented by the Handnote. The accessory right, represented by the pledged Collateral Mortgage Note, follows with the transfer of the principal obligation, *895 the Handnote. See, La. C.C. art. 2645 and the newly revised U.C.C. Chapter 9 provisions, La. R.S. 10:9-101, et seq.[3]
Next, the Baxleys belatedly raised the exception of prescription challenging the viability of the two notes. The trial court, before the lapse of time for the running of the new trial delays, allowed a hearing on the peremptory exception.
The Collateral Mortgage Note and the Handnote initially were due on demand and were subject to a liberative prescriptive period of five years that commenced in 1990. This prescription commences to run from the day payment is exigible. La. C.C. art. 3498; McGill v. Thigpen, 34,386 (La.App.2d Cir.2/28/01), 780 So.2d 1224. Partial payment on a promissory note is an acknowledgment of the debt which interrupts prescription. La. C.C. art. 3464; Anders Prod., Inc. v. Stream Farms, Inc., 502 So.2d 175 (La. App. 3d Cir.1987). Prescription does not run in favor of the debtor whose debt is secured by a pledge, and it remains interrupted as long as the thing pledged is in the possession of the pledgee. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956). It is not the contract or act of pledge that interrupts prescription but rather the detention by the pledgee of the thing pledged, such possession serving as a constant acknowledgment of the debt and hence a constant renunciation of prescription. Id. This rule, which may be referred to as the "constant acknowledgment" rule, constitutes one of the unique advantages of the collateral mortgage. See, Kaplan v. University Lake Corp., 381 So.2d 385 (La. 1980).
Regarding prescription on the Handnote, the Baxleys acknowledge in their brief and the evidence indicates that in 1993 a payment on the Handnote was made during the pendency of their bankruptcy. This payment occurred within the initial five-year prescriptive period of the debt. Thereafter, on December 16, 1996, the Modification Agreement was executed and a series of payments were made by the Baxleys pursuant to the agreement during 1997. Accordingly, these last payments occurred within five years of the *896 date of filing of this suit. Therefore, the trial court properly denied the exception of prescription regarding the Handnote. Additionally, the Collateral Mortgage Note was shown to have been held in pledge continuously as security for the Handnote indebtedness. Therefore, the "constant acknowledgment" rule cited above serves to prevent the running of prescription on that note.
Finally, the only issue of merit raised by the Baxleys concerned the summary judgment's indeterminate awards for "advanced escrow payments and late fees" and "reasonable attorney fees." No evidence was included in the motion for summary judgment that would identify the amount allocable to any such escrow payments, and while the Handnote provided for not less than 10% attorney's fees, the trial court may have found that amount unreasonable and intended to make a different award. Louisiana courts require that a judgment be precise, definite and certain. Vanderbrook v. Coachmen Indus., Inc., 01-809 (La.App. 1st Cir.5/10/02), 818 So.2d 906. The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Id.
Accordingly, we amend the judgment to delete those awards, and as amended, affirm the judgment as a partial summary judgment for $144,378.56 plus interest, and costs, and the recognition of Security National's rights in the mortgage as set forth therein. The case is remanded for any further assertions by Security National for escrow amounts and attorney's fees, with costs of appeal assessed to appellants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] A consent judgment recognizing Security National's mortgage as outranking the federal tax liens was signed by the trial court on March 11, 2003.
[2] We note that the Baxleys did not raise an affirmative defense asserting any discharge in bankruptcy.
[3] Chapter 9 of Title 10 of the Revised Statutes addresses U.C.C. Secured Transactions in Louisiana. La. R.S. 10:9-702 indicates that Chapter 9 applies to a transaction or lien within its scope, even if the transaction or lien was entered or created before July 1, 2001, and to proceedings commenced after July 1, 2001. Likewise, La. R.S. 9:3192 indicates that Chapter 9's provisions shall prevail over the assignment provisions of the Civil Code's chapter on sales in the event of conflict. A review of Chapter 9 indicates to us that Security National is a secured party, which is defined in La. R.S. 10:9-102(72) as a person to which a promissory note has been sold. Likewise, after consideration of the U.C.C. definitions for "security interest" [R.S. 10:1-201(37)] and "collateral" [R.S. 10:9-102(12)], the sale of a promissory note, which occurred in this case regarding the Handnote, is a transaction that gives rise to a security interest and the application of Chapter 9. La. R.S. 10:9-109(a)(3). Then specifically, Section 9-203(f) provides that the creation of the security interest in the buyer/assignee of a promissory note gives the buyer/assignee the rights to a "supporting obligation" for the promissory note. Supporting obligation is defined in Section 9-102(77) as a secondary obligation that supports the payment of an instrument, such as the Handnote. The Official Revision Comment (b) to Section 9-203 states that the section's intent is to provide that the transfer of an obligation (the Handnote) secured by a security interest or lien on movable or immovable property also transfers the security interest or lien. Thus, with the transfer and possession of the Handnote into Security National, as discussed above, and with Security National's possession of the Collateral Mortgage Note, these principles of Chapter 9 reflect that the security interest in the Collateral Mortgage Note and the mortgage right to the immovable property have been transferred to Security National.