MOORE, J.
| CadleRock Joint Venture LP appeals a judgment dismissing, on exceptions of prescription, its suit for a deficiency judgment. For the reasons expressed, we affirm.

Factual Background

The original borrower, J. Graves Scaffolding Inc., obtained a line of credit from Bank One La. in May 1999. It executed a collateral mortgage note in the principal sum of $500,000, encumbering two industrial tracts on West 62nd St. in Shreveport; an act of collateral mortgage, par-aphed ne varietur for identification with *1081 the collateral mortgage note; and a collateral pledge agreement, all in favor of Bank One La. The other defendants executed commercial guarantees, making them solidarity liable for any debts incurred on the credit line.[1]
J. Graves Scaffolding borrowed money on the credit line, executing promissory notes (“the hand notes”) for $2,087,824 and $700,000 on February 27, 2002. By this time, Bank One La. had merged into Bank One NA; in 2004, Bank One NA merged into JPMorgan Chase.
The hand notes fell into default. In February 2005, JPMorgan Chase filed an executory process suit against J. Graves Scaffolding in the First Judicial District Court. Attached to the petition were the original hand notes and collateral mortgage note; these remained in the possession of the First JDC clerk of court. The matter proceeded to a sheriffs sale on June 15, 2005, at which the lender, JPMor-gan Chase, bought the two tracts for 12$200,000, leaving a deficiency of over $2 million. JPMorgan Chase took no further steps to collect the deficiency. The clerk of court marked the act of collateral mortgage “cancelled” on August 8, 2005.
Over two years later, on September 12, 2007, JPMorgan Chase sold the hand notes and collateral to CadleRock. The bill of sale listed a principal balance due on the notes of over $8.1 million, but stated no sale price and declared the sale to be “as is,” without warranty, recourse or representation as to title, collectibility or otherwise.
Nearly six years later, on September 6, 2018, CadleRock filed a motion to substitute itself as party plaintiff in the executo-ry process suit, with a motion to withdraw the original hand notes and collateral mortgage note; this was granted on September 10, and CadleRock received the original notes on September 13.

Procedural History

CadleRock filed the instant suit for deficiency judgment in the 26th Judicial District Court on September 23, 2013.[2] It named J. Graves Scaffolding and all the guarantors as defendants, and alleged principal and interest of almost $3.2 million due on the hand notes.
The defendants, in various alignments, filed four exceptions of prescription. They asserted that the claim was prescribed on its face, coming over five years after the notes fell due, La. C.C. art. 3498, or five years after the final payment, by sheriffs sale on June 15, 2005. They argued that prescription was not interrupted by possession of the pledged | .¡collateral mortgage note, as CadleRock did not get corporeal possession of this until September 2013, years after the claim prescribed. They also argued that JPMorgan Chase abandoned the matter by failing to take any step in its prosecution for three years after the sheriffs sale, La. C.C.P. art. 561, La. C.C. art. 3463.
CadleRock opposed the exceptions, urging the “constant acknowledgment rule,” that prescription does not run in favor of a debtor whose debt is secured by a pledge as long as the thing pledged remains in the possession of the pledgee. McGill v. Thigpen, 34,386 (La.App. 2 Cir. 2/28/01), 780 So.2d 1224, and citations therein. It argued that a pledgee need not have actual possession of the collateral mortgage and *1082 note to interrupt prescription; “it is sufficient that it be in [the possession of] someone who holds for the account of the creditor,” Scott v. Corkern, 231 La. 368, 380, 91 So.2d 569, 573 (1956). It submitted that JPMorgan Chase was required to deliver the pledge to the clerk of court, La. C.C.P. art. 2635, so the clerk was holding on behalf of the creditor; after buying the hand notes, CadleRock was under no duty to substitute itself as party plaintiff unless ordered by the court, La. C.C.P. art. 807. It concluded that “precarious possession” by the clerk of court after September 2007 interrupted prescription on CadleRock’s behalf.
After a hearing on February 24, 2014, the district court ruled orally that the proees-verbal of the sheriffs sale was August 8, 2005, after which the action was abandoned for failure to prosecute for three years, effective August 8, 2008; on that date, the five-year prescriptive period began | ^running again, ending on August 8, 2013. CadleRock did not move to withdraw the collateral mortgage note until over five years later, on September 11, 2013, and thus the action was prescribed. The court rendered judgment sustaining the exceptions and dismissing CadleRock’s •suit.

The Parties’ Positions

CadleRock has appealed, raising two related assignments of error: (1) The court erred in sustaining the exceptions of prescription; (2) The court erred in concluding that the effect of the corporeal possession of the collateral mortgage note by the clerk of court terminated after the sheriffs sale and that the executory proceeding was abandoned by operation of law. CadleR-ock reiterates the general concept of the constant acknowledgment rule, as summarized in three articles by Prof. Max Nathan,[3] this court’s synopsis in McGill v. Thigpen, supra, and the supreme court’s seminal opinion of Succession of Picard, 238 La. 455, 115 So.2d 817 (1959).
CadleRock urges that the act of pledging, not the identity of who holds the pledged property, is what actually interrupts prescription. “Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee.” Conger v. City of New Orleans, 32 La.Ann. 1250 (1880); Scott v. Corkern, supra (using the term pro hac vice); First Nat’l Bank of Shreveport v. Querbes, 253 So.2d 123 (La.App. 2 Cir.1971) (using the phrase “in the capacity of a | ¡^trustee”). JPMorgan Chase had to file the act of collateral mortgage with the clerk of court to prove its right to executory process, La. C.C.P. art. 2635, and the clerk became the custodian of that document, La. C.C.P. art. 253. As such, the clerk was custodian of the document for JPMorgan Chase and, later, for CadleRock. In support, it cites Gulf National LLC v. Alfortish Inc., 05-804 (La.App. 5 Cir. 3/14/06), 926 So.2d 676, writ not cons., 2006-0879 (La.6/2/06), 929 So.2d 1241, which it urges is indistinguishable from the instant case.
By its second assignment, CadleRock disputes the court’s finding that the sheriffs sale extinguished the mortgage. Again citing Succession of Picard, supra, it urges that regardless of the value of the thing pledged, the obligation of the pledg-ee to return the property continues: “Possession is the factor which serves as a *1083 constant acknowledgment of the debt.” Even if the parties revoked the contracts, the pledge would continue to interrupt prescription, as in Kaplan v. University Lake Corp., 381 So.2d 385 (La.1980). CadleRock suggests that the debtor could have requested return of the notes after the seizure and sale, but did not do so, thus continuing the pledge and interruption of prescription. It concludes that the hand notes cannot prescribe, and the exceptions of prescription must be overruled.
The defendants respond that constant acknowledgment is irrelevant: once the property encumbered by the act of collateral mortgage was sold, the collateral mortgage note ceased to exist and was no longer a pledge that interrupted prescription. The claim prescribed on its face five years after the hand notes were due, La. C.C. art. 3498; and the act of collateral | f,mortgage was canceled by operation of law by the sheriffs sale of the mortgaged property, La. C.C. art. 3391(2) and (4), as noted by the clerk of court on August 8, 2005. Because an essential element of a collateral mortgage, the act of collateral mortgage, was extinguished, the whole package was extinguished; the five-year prescriptive period started on the date of the sheriffs sale and ended June 15, 2010. With no collateral mortgage, there was nothing to interrupt prescription under the constant acknowledgment rule. In support, they cite Diamond Servs. Corp. v. Benoit, 2000-0469, p. 17 (La.2/21/01), 780 So.2d 367, 377:
Without an act of mortgage, there can be no mortgage note; without a mortgage note, there is no collateral to be pledged; without the pledge of the note, the mortgage is dormant and there is no obligation secured by the mortgage. Nathan and Marshall, [op. eit], 33 La. L. Rev. at 521.
The possession of an “empty and valueless” obligation, they contend, such as the extinguished collateral mortgage note, is not the type of pledge that interrupts prescription. When the thing pledged is extinguished, they submit, there is no constant acknowledgment. Finally, they show that the extinction of the principal obligation extinguishes the suretyship, La. C.C. art. 3059; Finova Capital Corp. v. Short’s Pharmacy Inc., 39,642 (La.App. 2 Cir. 5/13/05), 904 So.2d 57, writ denied, 2005-1930 (La.2/17/06), 924 So.2d 1022. They conclude that the judgment should be affirmed.

Discussion

A collateral mortgage is a mortgage given to secure a written obligation, such as a collateral mortgage note, negotiable or nonnegotiable instrument, or other written evidence of debt, that is issued, pledged, or 17otherwise used as security for another obligation. La. R.S. 9:5550(1); Diamond Servs. Corp. v. Benoit, supra. A collateral mortgage is not a “pure” mortgage but a hybrid combining the security devices of mortgage and pledge into one. Diamond Servs. Corp. v. Benoit, supra; First Federal Sav. & Loan Ass’n v. Moss, 616 So.2d 648 (La.1993). In a collateral mortgage, the borrower’s mortgage secures a fictitious collateral mortgage note, which is payable to bearer on demand; the collateral mortgage note is then pledged under a collateral pledge agreement to secure the borrower’s true indebtedness under one or more hand notes. Diamond Servs. Corp. v. Benoit, supra, citing David S. Willenzik, Louisiana Secured Transactions, § 2:13 (2000). The effect of the pledge is at issue in the instant case.
Prescription does not run in favor of a debtor whose debt is secured by a pledge as long as the thing pledged remains in the possession of the pledgee. Kaplan v. University Lake Corp., supra; *1084 McGill v. Thigpen, supra. This principle, known as the constant acknowledgment rule, holds that it is not the act of pledging that interrupts prescription; rather, it is the retention by the pledgee of the thing pledged that serves as constant acknowledgment of the debt and renunciation of prescription. Id. Even when the note pledged to secure another note has prescribed, the pledgee’s retention of the prescribed promissory note still interrupts prescription on the primary debt. Succession of Picard, supra; McGill v. Thigpen, supra.
Moreover, “personal liability does not generally arise on the collateral mortgage note when the note is pledged to secure the obligation of a third party.” Diamond Servs. Corp. v. Benoit, supra at 22-23, 780 So.2d at 380. |sThe facts of Benoit and the plurality’s use of “generally” limited the holding to a situation where the maker of the ne varietur note allowed its pledge for the debt of a third party. However, the rationale may logically be extended to apply to any ne varietur note, even when the maker of that note and the maker of the hand note are the same. Nevertheless, as the Louisiana Supreme Court has not addressed the issue, we will rest our ruling on the failure to reconstitute the pledge of the ne varietur note after the conclusion of the executory process proceeding.
Executory process is a proceeding in rem and does not seek a personal judgment against the debtor. Louisiana Bank & Tr. Co. v. Pernici, 372 So.2d 788 (La.App. 2 Cir.1979); First Guaranty Bank v. Ratcliff, 424 So.2d 289 (La.App. 1 Cir.1982), writ denied, 432 So.2d 265 (1983). Only after converting the concluded in rem action to an ordinary proceeding may the creditor seek a deficiency judgment. La. C.C.P. art. 2772. The distinction between an in rem action on the mortgage itself, and an ordinary personal action, which might arguably encompass liability on the ne varietur note, is crucial. In an in rem action, the creditor may withdraw the ne varietur note after the sheriffs sale and thereby reconstitute the pledge; or the creditor may convert the in rem action to an ordinary action for a deficiency, starting prescription anew. In the latter case, the ne varietur note would remain with the clerk of court from one suit to the next, and interruption of prescription by suit would suffice. La. C.C.P. art. 3462. However, if the in rem suit has been concluded by sheriffs sale, and the creditor has not withdrawn the ne varie-tur note from the clerk of court |9within five years, prescription operates. Such is the case here.
In reaching this conclusion, we reject CadleRock’s assertion that the pledge of the ne varietur note continued upon the institution of the executory process suit and the filing of the note' into the suit record. The privilege imparted by the pledge, or the pledge itself, exists only when the note “has been actually put and remains in the possession of the creditor, or of a third person agreed on by the parties.” La. C.C. art. 3162.[4] Possession is relinquished by the pledgee upon the filing of suit, and the clerk of court is not within the language and meaning of “a *1085 third person agreed on by the parties” who might continue the pledge in force.
The instant record shows that the pledge occurred on May 12, 1999, and constant acknowledgment began to operate from that date. JPMorgan Chase filed for executory process on February 25, 2005, and the suit interrupted prescription from that date. The sheriffs sale occurred on June 15, 2005. As of that date, prescription was interrupted only by partial payment received from the sheriffs sale, and would accrue in .five years. The record does not show that JPMorgan Chase withdrew the act of collateral mortgage from the clerk of court until September 6, 2013, or over five years later. The district court did not err in finding that by this time, prescription has run.
hoWe do not accept CadleRock’s contention that Gulf National v. Alfortish, supra, mandates the opposite result. That opinion states that the suit for executory process was “supplemented” on July 28, 1997; that the original creditor sold the debt package to Gulf National on September 27, 2002; and that Gulf National moved to withdraw the collateral mortgage package on October 21, 2004. The, opinion critically does not state when the judgment of default was taken against the guarantors or whether any sheriffs sale ever occurred. It is entirely possible that Gulf National retook the ne varietur note within five years after payment by execution, in which event the result is justified. Gulf National is therefore distinguished, and to the extent that it recognizes constant acknowledgment after payment of the hand note and without the creditor’s actual possession of the collateral mortgage package, we would decline to follow it.
In summary, JPMorgan Chase did not convert the concluded executory process proceeding to an ordinary action and continue the interruption of prescription on its debt. Likewise, it did not withdraw the ne varietur note from the suit record and attempt to reconstitute the pledge. Both of these actions were within the creditor’s power, but because they did not occur, prescription ran.
In light of this conclusion, we pretermit consideration of the other contentions raised by the parties.

Conclusion

For the reasons expressed, the judgment sustaining the exception of prescription is affirmed at CadleRock Joint Venture LP’s cost.
AFFIRMED.

. The other defendants are J.W. Graves Enterprises Inc., a related company, and Brian and Holly Bristow, Michael M. Allen, Eddie and Karen Scott, and John and Doris Tyler, officers of J. Graves Scaffolding.

. The corporations were actually domiciled in Bossier Parish, as were three of the seven guarantors.

. Max Nathan Jr. & H. Gayle Marshall, The Collateral Mortgage, 33 La. L. Rev. 497 (1973); Max Nathan Jr. & H. Gayle Marshall, The Collateral Mortgage: A Reassessment and Postscript, 36 La. L. Rev. 973 (1975); Max Nathan Jr. & Anthony P. Dunbar, The Collateral Mortgage: Logic and Experience, 49 La. L.Rev. 39 (1988).

. Art. 3162 was repealed by 2014 La. Acts No. 281, but it applies to this case. The new La. C.C. art. 3149, effective January 1, 2015, provides: “The pledge of a corporeal movable is effective between the parties only if the thing pledged has been delivered to the pledgee or a third person who has agreed to hold the thing for the benefit of the pledgee. The pledge of other things is effective between the parties only if established by written contract, but delivery is not required.”